## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

JUAN CARLOS MONTOYA,                    )
on behalf of himself and                )
all others similarly situated,          )
                                        )
             Plaintiffs,     )
                                        )   Civil Action No. 1:16-cv-10095-PBS
v.                                      )
                                        )
CRST EXPEDITED, INC.,                   )
                                        )
             Defendant.      )
_____         )

**PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION
AND TO ISSUE NOTICE UNDER 29 U.S.C. § 216(B)
AND MEMORANDUM IN SUPPORT THEREOF**

Plaintiff Juan Carlos Montoya worked for Defendant CRST Expedited, Inc. ("CRST") as an over-the-road truck driver.  Like most other drivers for Defendant, Plaintiff was required to participate in Defendant's Driver Training Program.  Among other claims, Plaintiff alleges that Defendant violated the minimum wage provisions of the federal Fair Labor Standards Act, 29 U.S.C. § 207 ("FLSA") by: 1) not paying him wages for his time spent at a mandatory driver training school and subsequent CRST orientation; 2) paying him by the mile for his driving time only, resulting in an effective wage rate below the federal minimum; and 3) taking deductions, including deductions for the alleged costs of the mandatory training program, from his wages that brought his wages below the federal minimum.

Plaintiff now seeks to protect the wage rights of all similarly situated drivers by notifying them that they may join this lawsuit pursuant to 29 U.S.C. § 216(b).  The

standard for obtaining such notice is very lenient and is well satisfied here.  Plaintiff need only show that the drivers he seeks to notify are similarly situated with respect to their claims under the FLSA.  Unlike a motion to certify a class under Federal Rule of Civil Procedure 23, Plaintiff need not show that common questions will predominate (though they do), that a class or collective action is superior (though it is), or that their claims are typical (though they are).  Rather, Plaintiff need only make a "modest factual showing or assert[] substantial allegations that the putative class members [are] together the victims of a single decision, policy, or plan that violated the law." *Trezvant v. Fidelity Emp'r Servs. Corp.*, 434 F. Supp. 2d 40, 42-45 (D. Mass. 2006).

Under this lenient FLSA conditional certification standard, courts routinely allow notice to drivers where plaintiffs allege systematic policies and practices by trucking companies like CRST.  *See infra* Part II.  In fact, the Eastern District of California previously ordered conditional certification of a class of CRST drivers based on FLSA claims similar to those brought by Plaintiff.  *Gatdula, et al. v. CRST International, Inc., et al.*, No. CV 11-01285 VAP (OPx) (E.D. Cal. Aug. 21, 2012).

Here, Plaintiff has more than satisfied the requirements for notice under § 216(b). As set forth below, the allegations in the Complaint and the attached written agreements that Defendant executes with all drivers participating in its Driver Training Program clearly identify a uniform compensation policy that applies to all drivers in the proposed class.  Plaintiff Montoya has supplemented these substantial allegations with payroll records showing that the policy of paying drivers by the mile often results in effective wage rates of far less than the federal minimum.  Compl. ¶¶ 43-47 (ECF No. 1);

Compl., Ex. E (ECF No. 1-5). Moreover, the declarations of Plaintiff Montoya and the three opt-in plaintiffs, as well as letters that they received from Defendant, show that Defendant maintains a policy and practice of pursuing repayment of its alleged training program expenses that Plaintiff alleges violates the FLSA. Montoya Declaration ¶ 4, Exhibit A; Hollingsworth Declaration ¶ 4; Fogarty Declaration ¶ 4, Exhibit A; Johnson Declaration ¶¶ 4-5, Exhibit A.[1]

Based on this showing, notice is both appropriate and necessary to preserve the rights of Defendant's current and former drivers. Unlike Rule 23 class procedures, the statute of limitations in a collective action brought under the FLSA is not tolled with respect to unnamed collective action members merely by the filing of a complaint. Rather, employees must affirmatively toll the statute of limitations by "opting into" the lawsuit – until they do, their statute of limitations wastes away daily, with some running the risk of expiration. Prompt, judicially-sanctioned notice is the only way to prevent this from occurring, in addition to ensuring that information concerning this lawsuit is conveyed to potentially interested parties in a neutral and accurate manner.

Accordingly, for the reasons set forth here, Plaintiff respectfully asks that the Court:

(1) conditionally certify this case as a collective action with two overlapping classes:

(a) all individuals who have participated in Defendant's Driver Training Program since December 22, 2013; and

---

[1] These declarations have been filed together with this motion.

(b) all individuals who have executed Driver Employment Contracts with

Defendant since December 22, 2013;

(2) order Defendant to produce the names and addresses of the conditionally

certified collective action members; and

(3) authorize Plaintiff to issue notice to all members of the conditionally certified

collective action.

## Background

Defendant operates a "coast-to-coast" trucking company that serves customers in

manufacturing and distribution.  http://www.crst.com/companies/expedited/,

attached as Exhibit A.  According to Defendant, it employs at least 3,500 drivers at a

time and it "trains thousands of new drivers every year."  *Id.*;

http://www.crst.com/drive-for-crst/schools/, attached as Exhibit B.  It claims to have

"the largest number of team truck drivers in the industry."

http://www.crst.com/services/expedited-team-service/, attached as Exhibit C.  In a

deposition submitted in another case brought by truck drivers against CRST in

California, alleging wage claims similar to those in this case, CRST's corporate

representative, Lawrence H. Shaevitz,[2] confirmed that CRST is a national long-haul

trucking business.  Shaevitz Dep. at 12, attached as Exhibit E.

Plaintiff Montoya and the opt-in plaintiffs were recruited by Defendant to work

as over-the-road drivers.  Compl. ¶ 19 (ECF No. 1); Montoya Decl. ¶ 2; Hollingsworth

---

[2]     *See Smith v. CRST Van Expedited, Inc.*, No. 10-CV-1116 (S.D. Cal. April 23, 2012)
(ECF No. 78) (certifying a settlement class of drivers), attached as Exhibit D.  The
deposition of Mr. Shaevitz (ECF No. 30-2) was submitted with the plaintiffs' Exhibits in
Support of Plaintiffs' Motion for Class Certification (ECF No. 30) in that case.

Decl. ¶ 2; Fogarty Decl. ¶ 2; Johnson Decl. ¶ 2.  They, and the class of drivers that Plaintiff Montoya seeks to represent, were all subject to the same company policy denying them compensation lawfully owed under the FLSA.  These uniform policies are spelled out in the standard documents that drivers are required to sign: namely, a "Pre-Employment Driver Training Agreement" ("Pre-Employment Agreement") accompanied by an "Assignment of Wages and Payroll Deduction Agreement," Compl., Ex. C (ECF No. 1-3), and a "Driver Employment Contract."  Compl., Ex. D (ECF No. 1-4).

Plaintiff Montoya and the opt-in plaintiffs, like the "thousands of new drivers" referenced on CRST's website, *see* Ex. B, were all required to complete Defendant's Driver Training Program, as were the numerous other drivers who started working for CRST at the same time as them.  Montoya Decl. ¶ 3; Hollingsworth Decl. ¶ 3; Fogarty Decl. ¶ 3; Johnson Decl. ¶ 3.  Defendant's Driver Training Program consists of four phases:

Phase 1 – Driver Training School (at least one week);

Phase 2 – Orientation (3.5 days);

Phase 3 – Over-the-road training while paired with a "lead driver"(28 days); and

Phase 4 – Continuation training (six months or more).

Complaint, Ex. C (ECF No. 1-3); Shaevitz Dep. (Ex. E) at 52.

During Phase 1 and Phase 2, drivers do not receive any wages for the mandatory training.  Instead, they accumulate alleged debts owed to Defendant based on Defendant's advances for tuition, lodging, drug tests, and other fees.  Compl. ¶¶ 24-32.

During Phase 3 and Phase 4, drivers are paid a rate per mile for "on-duty driving time." Drivers are not, however, paid for loading or unloading time, or any other time when the truck is not moving.  Neither are they paid for any time when the other driver is driving the truck.  The resulting wage per hour is often less than the federal minimum wage of $7.25 per hour.  Compl. ¶¶ 43-47; Compl., Ex. E.

Defendant also has a systematic policy of taking deductions from drivers' wages that bring their wages below the federal minimum and constitute unlawful kickbacks under the FLSA.  These deductions are spelled out in the Driver Employment Contract: during the drivers' sixth week of employment, after completing one week of Phase 4, Defendant begins to deduct $40 per week from drivers' wages as repayment for Defendant's alleged "advances" during Phase 1 and Phase 2, plus interest of 1.5 percent per month (18 percent per year).  Compl. ¶¶ 33, 39; Compl., Ex. D; Hollingsworth Decl. ¶ 4; Johnson Decl. ¶ 5.  These deductions are made until drivers have repaid their alleged debts in full, although the full amount of the debt is never quantified.  *Id.*  If a driver's contract is terminated without him or her having completed 10 months of employment for Defendant, the driver immediately owes the following sums to Defendant:  $6,500; plus the Phase 1 advances for any drug screens, physicals, lodging, and transportation; plus interest of 1.5 percent per month; minus any amounts already repaid through wage deductions.  *Id.*  Defendant subtracts any amounts owed from the driver's last paycheck upon termination.  Compl. ¶¶ 39, 55; Compl., Ex. D.  Defendant also sends letters to former drivers seeking repayment of the amounts allegedly owed threatening to turn the matter over to a collections agency.  Compl. ¶¶ 55, 73; Compl.,

Ex. F; Montoya Decl. ¶ 4, Ex. A; Fogarty Decl. ¶ 4, Ex. A; Johnson Decl. ¶ 4, Ex. A.  In

addition to these deductions from wages taken during Phase 4, Defendant makes

certain deductions from wages during Phase 3.  For example, during Phase 3,

Defendant deducted $40 from Plaintiff Montoya's pay for the drug screen.  Compl. ¶ 28;

Montoya Decl. ¶ 5, Ex. B; *see also* Fogarty Decl. ¶ 5; Johnson Decl. ¶ 5.

**Argument**

**I.      The Court may order that notice issue upon a modest factual showing that similarly situated employees exist.**

The FLSA authorizes workers to bring suit on their own behalf and on behalf of

all others similarly situated.  29 U.S.C. § 216(b).  Unlike Rule 23 procedures, workers

may only join an FLSA collective action if they "give [their] consent in writing to

become . . . a party and such consent is filed with the court in which [the] action is

brought."  *Id.*  This procedure affords plaintiffs the opportunity to resolve claims that

typically are too small to prosecute individually while "lower[ing] individual costs to

vindicate rights by the pooling of resources."  *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S.

165, 170 (1989).  It also assists courts in avoiding a "multiplicity of duplicative suits"

challenging a common policy or practice, and "set[s] cutoff dates to expedite disposition

of the action."  *Id.* at 170-71.

All of "[t]hese benefits . . . depend on employees receiving accurate and timely

notice concerning the pendency of the collective action so that they can make informed

decisions about whether to participate."  *Id.*  Otherwise, the "enforcement of [statutory]

remedies for violations which victimize a group of people will be limited only to those

victims who are already known to their 'champion,' . . . or who are fortunate enough to

7

hear and heed 'the vagaries of rumor and gossip,' . . . or who are courageous enough to recognize the wrong done them and sue on their own." *Sperling v. Hoffman-La Roche, Inc.*, 118 F.R.D. 392, 403 (D.N.J. 1988), *aff'd* 493 U.S. 165 (1989).

The failure to facilitate notice can result in the spoliation of claims, since, as previously noted, the statute of limitations for FLSA collective actions is not tolled as to each potential collective action member unless and until he files a written consent form with the Court.  29 U.S.C. §§ 256-57; *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 260 (S.D.N.Y. 1997) (potential collective action members' claims will "die daily" until they are notified of the action and given a chance to opt-in).  Courts should reserve "merits-based arguments" for the period after notice is issued because the "rights of putative class members may expire in the interim." *Poreda v.  Boise Cascade, L.L.C.*, 532 F. Supp. 2d 234, 241 (D. Mass. 2008).

To remedy these problems, the Supreme Court has authorized the district courts to facilitate notice.  *Hoffman-La Roche*, 493 U.S. at 170.  As in most jurisdictions, the district courts for the First Circuit follow a two-step certification approach in determining whether to allow notice.  *See Poreda*, 532 F. Supp. 2d at 238-39 ("As District Judge William G. Young recently noted, a majority of courts addressing the issue of whether the similarly situated requirement has been satisfied have . . . adopted a two-tier approach").  "Under this approach, the court makes an initial determination of whether the potential class should receive notice of the pending action and then, later, after discovery is complete, the court makes a final 'similarly situated' determination." *Id.*, *quoting Trezvant*, 434 F. Supp. 2d at 43.

8

During the first, initial step, before discovery has been completed, the merits of the plaintiffs' claims are not at issue.  *See Trezvant*, 434 F. Supp. 2d at 43; *Kane v. Gage Merchandising Servs., Inc.*, 138 F. Supp. 2d 212, 214-15 (D. Mass. 2001).  Instead, the "court usually relies 'only on the pleadings and any affidavits which have been submitted . . . .'"  *Kane*, 138 F. Supp. 2d at 214, *quoting Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995).  "Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class."  *Id.; see also Wise v. Patriot Resorts Corp.*, 2006 WL 6110885, *1 (D. Mass. Feb. 15, 2006).

There is no "hard-and-fast rule as to how plaintiffs seeking conditional certification must meet this lenient 'similarly situated' standard at this initial stage."  *Trezvant*, 434 F. Supp. 2d at 44-45.  "[S]ome courts have held that, at the 'notice' stage, plaintiffs need only make substantial allegations that the putative class members were subject to a single decision, policy, or plan that violated the law."  *Kane*, 138 F. Supp. 2d at 214.  Others have generally required a "modest factual showing" of "similar factual and legal characteristics, so that [they are] satisfied that there is a basis to conclude that questions common to a potential group of plaintiffs would predominate a determination of the merits in this case."  *Trezvant*, 434 F. Supp. 2d at 45.  Plaintiff here has satisfied both standards.

II.    **The Court should authorize notice in this case because Plaintiff has more than satisfied his modest burden of showing that similarly situated employees exist.**

Defendant trains and employs thousands of drivers nationwide.  Ex. A; Ex. B.

Plaintiff Montoya and the three opt-in plaintiffs were all required to complete CRST's

Driver Training Program.  Montoya Decl. ¶ 3; Hollingsworth Decl. ¶ 3; Fogarty Decl. ¶

3; Johnson Decl. ¶ 3.  All drivers trained by Defendant are required to sign the same

Pre-Employment Agreement and Driver Employment Contract as Plaintiff Montoya.

*See* Compl. ¶¶ 23, 35; Compl., Ex. C (ECF No. 1-3); Shaevitz Dep. (Ex. E) at 29

(discussing CRST contract student drivers in California, who were all required to sign

pre-employment agreements identical to the one Plaintiff Montoya signed)[3]; Compl.,

Ex. D (ECF No. 1-4), ¶ 6 (incorporating compensation "set forth in the Handbook");

CRST Driver Handbook (Revised 2014), attached as Exhibit G, at 195-96.  These written

agreements clearly establish a uniform compensation policy of 1) not paying drivers

any wages at all for time spent in Phase 1 and 2 training; 2) paying drivers by the mile

for driving time only during Phase 3 and 4; and 3) taking deductions from drivers'

wages during Phase 3 and 4.  Each of these practices result in FLSA violations.

Although Plaintiff need not prove the merits of these allegations at this stage, it bears

noting that it is black-letter law that employees must be paid at least minimum wage for

their work and that deductions that take an employee's wages below the federal

minimum wage violate the FLSA.  *See, e.g.,* 29 C.F.R. § 531.35 (providing that wages

---

[3]    A copy of the Pre-Employment Driver Training Agreement referenced in the
deposition is attached here as Exhibit F.

must be paid to employees "finally and unconditionally or 'free and clear'"); 29 C.F.R. §

531.36(b) (employer may not deduct from employees' wages the cost of facilities which

primarily benefit employer if deductions "reduce the wages of the employee . . . below

the minimum required by the Act").

The written documents cited here, which constitute admissions by Defendant,

are sufficient to establish that Plaintiff Montoya is similarly situated to other drivers in

the proposed classes.  This documentary evidence is further bolstered by the

declarations of Plaintiff Montoya and the three opt-in plaintiffs.

Courts routinely grant conditional certification in cases alleging minimum wage

violations on behalf of over-the-road truck drivers.  *See, e.g., Gudmundson, et al. v.*

*Stevens Transport, Inc., et al.*, No. 3:13-cv-02010 (ECF No. 60) (N.D. Tex. Jan. 10, 2014)

(conditionally certifying class of over-the-road drivers paid per mile resulting in alleged

FLSA minimum wage violations); *Petrone v. Werner Enterprises, Inc.*, No. 8:11CV401,

2012 WL 4848900, *3-4 (D. Neb. Oct. 11, 2012) (conditionally certifying class of over-the-

road student drivers paid only for on-duty driving time); *Gatdula, et al. v. CRST*

*International, Inc., et al.*, No. CV 11-01285 VAP (OPx) (E.D. Cal. Aug. 21, 2012), attached

as Exhibit H (conditionally certifying class of CRST drivers paid per mile resulting in

FLSA violations).  The Southern District Court of California has even certified a

settlement class of drivers for CRST Van Expedited, Inc. under the more rigorous Rule

23 standard.  *Smith v. CRST Van Expedited, Inc.*, No. 10-CV-1116 (S.D. Cal. April 23,

2012), attached as Exhibit D.

In *Gatdula*, the court conditionally certified a class of CRST drivers based on allegations in the complaint quite similar to the allegations here, and two declarations submitted by the named plaintiffs.  Ex. H at 8 n.3.  The court granted conditional certification over Defendants' objection that the declarations provided only anecdotal evidence of minimum wage violations, noting that the court "would reserve[] judgment on the ultimate merits of the allegations until after discovery is complete." *Id.* at 10.

This Court as well has granted conditional certification based on similar showings.  Recently, this Court granted conditional certification to a small nationwide class of rental car "damage managers" based on the named plaintiff's affidavit and the defendant's job descriptions for the position.  *Cunha v. Avis Budget Car Rental, LLC*, Civil Action No. 16-10545-FDS (ECF No. 21) (D. Mass. Oct. 26, 2016), attached as Exhibit I.  In *Poreda*, the District Court authorized notice to over 1,300 employees working at the defendant's distribution plants based on the plaintiff's affidavit, in which he asserted that the defendant did not pay him overtime compensation in the same pay period during which that compensation was earned.  532 F. Supp. 2d at 238-39.  In *Kane*, the Court granted conditional certification based on an affidavit submitted by the plaintiff and a countervailing affidavit from one of the defendants' managers, which together "suggest[ed] that the Defendants had a policy of treating at least some of a discrete class of employees (i.e. Crew Coordinators) as exempt from the FLSA overtime requirements."  *Kane*, 138 F. Supp. 2d at 215.  And in *Trezvant*, the Court allowed notice based on the plaintiffs' allegations in their complaint plus their affidavits.  434 F. Supp. 2d at 49-50.  Those affidavits "identified a practice in which [employees] were told that

they were not entitled to overtime pay and promised by the company that, instead, they would receive comp time for the long hours they worked," and described how they "worked long hours and were dissatisfied with [defendant's] policy of allowing comp time in lieu of overtime pay." *Id.*

Here, notice is clearly warranted based on the substantial allegations made by Plaintiff in his Complaint, the admissions contained within Defendant's written agreements with drivers and Shaevitz's deposition from the *Smith* case, the declarations of Plaintiff Montoya and the other opt-in plaintiffs, and the limited payroll documents available to Plaintiff showing wage rates below the federal minimum.  Plaintiff has identified a discrete group of employees sharing "similar factual and legal characteristics," *Trezvant*, 434 F. Supp. 2d at 45, namely, over-the-road drivers who have either participated in Defendant's Driver Training Program and/or worked for Defendant pursuant to the Driver Employment Contract, subject to the same compensation system, throughout the country.  On these facts, it is only appropriate that drivers should receive judicially-approved notice informing them in a neutral manner about this lawsuit, their rights, and their ability to join the proceedings should they wish to pursue their claims under the FLSA.

Moreover, notice is appropriate in this case because it would further the remedial and enforcement purposes of the FLSA.  Notice is intended to "avoid multiple lawsuits where numerous employees have allegedly been harmed by a claimed violation or violations of the FLSA by a particular employer." *Prickett v. DeKalb County*, 349 F.3d 1294, 1297 (11th Cir. 2003).  Notice also establishes a strong incentive for employers to

13

comply with the FLSA.  *See Skirchak v. Dynamics Research Corp.*, 432 F. Supp. 2d 175, 181 (D. Mass. 2006) (without class actions, employers would have no "incentive. . . to avoid the type of conduct that might lead to class action litigation in the first instance"). Authorizing notice in this case would advance those goals, both by allowing a group of employees who have been harmed by an alleged violation of the FLSA by participating in a single suit, and by ensuring that Defendant is held accountable under that statute. Thus, as in the cases discussed above, the Court should conditionally certify the collective action and authorize notice to issue.

III.   **It is appropriate for the Court to toll the statute of limitations on the collective action members' claims while this motion is pending.**

Plaintiff has defined the collective action in this case to include (1) all individuals who have participated in Defendant's Driver Training Program since December 22, 2013; and (2) all individuals who have executed Driver Employment Contracts with Defendant since December 22, 2013.  The claims should go back three years, because the FLSA carries a three-year statute of limitations for willful violations of its wage and overtime provisions.  *See* 29 U.S.C. § 255(a).  Courts routinely certify collective actions for three-year periods for two reasons: first, to ensure that notice reaches as many possible members of the collective action as possible; and second, because requiring plaintiffs to prove willfulness in order to obtain notice for a three-year period would entail an impermissible inquiry into the merits of the case prior to full discovery.  *See Trezvant*, 434 F. Supp. 2d at 51; *Prescott v. Prudential Ins. Co.*, 729 F. Supp. 2d 357, 370 (D. Me. 2010) ("At this stage of the certification process, justice is best served by notice reaching the largest number of potential plaintiffs, and I therefore employ the three

years"); *Bouder v. Prudential Fin., Inc.*, 2008 WL 7898281, at *5 (D.N.J. 2008) ("In the interest of reaching all potential opt-in plaintiffs, notice should extend back to three years prior to this Court's opinion"); *Albanil v. Coast 2 Coast, Inc.*, 2008 WL 4937565, at *6 (S.D. Tex. Nov. 17, 2008) ("notice is proper for potential class members employed by the defendant within the full three-year period; holding otherwise would require the plaintiff to prove willfulness without the benefit of full discovery").

Indeed, if notice were only issued to drivers based on a two-year statute of limitations, and it was later determined that Defendant acted willfully, then any driver who worked more than two years ago (but within the last three years), would not receive timely notice.  Such individuals would likely lose their rights to assert a claim entirely due to the passage of time.  By contrast, if it is determined that Defendant did not act willfully, and that a two-year statute of limitations applies, then those drivers who worked for Defendant more than two years ago (but less than three) may simply be excluded from the collective action.  Thus, adopting a three-year statutory period for notice purposes is the proper course.

Conditionally certifying a collective action for notice purposes with a start date of December 22, 2016, will require the Court to toll the three-year statute of limitations while this motion is pending.  Such tolling is appropriate in these circumstances.  The principle that the courts may toll a statute of limitations where equity requires is "older than the country itself."  *Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231, 235 (1959).  This power to suspend the limitations period is properly applied "where the interests of justice require vindication of the plaintiff's rights," *Burnett v. New York Cent. R. Co.*, 380

U.S. 424, 428 (1965), and is "read into every federal statute of limitations," *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946).

With respect to the FLSA, courts have equitably tolled the statute of limitations while the plaintiffs' motion for conditional certification was pending for a variety of reasons.  For example, in *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438 (S.D.N.Y. 2012), the district court tolled the statute of limitations for the collective action members as of the date that the plaintiffs filed their motion for conditional certification.  In justifying its decision, the court explained that, "[w]hile plaintiffs wishing to pursue their rights cannot sit on them indefinitely, those whose putative class representatives and their counsel are diligently and timely pursuing the claims should also not be penalized due to the courts' heavy dockets and understandable delays in rulings." *Id.*

Similarly, in *Struck v. PNC Bank N.A.*, 931 F. Supp. 2d 642 (S.D. Ohio 2013), the district court equitably tolled the statute of limitations from the date that the plaintiffs filed their motion for conditional certification until 60 days after notice was issued.  As the court explained, tolling was appropriate because the collective action members could not have known about the lawsuit absent notice; the plaintiff was diligent in pursing conditional certification; and defendant would not be prejudiced by tolling since it had known from the beginning that the case was being pursued on a collective basis.  Based on those considerations, the court ruled that the "interests of justice weigh heavily in favor of tolling the FLSA's statute of limitations for putative opt-in plaintiffs." *Id.* at 847-49.

And in *Small v. University Medical Center of Southern Nevada*, 2013 WL 3043454, *1 (D. Nev. June 14, 2013), the district court tolled the statute of limitations effective 30 days after the plaintiffs had filed their motion.  There, the court weighed the equities between the two sides, ruling that a failure to toll the statute of limitations would "unfairly prejudice[]" the potential collective action members, but would not prejudice the defendant because the "potential scope of its liability was known when the Complaint was filed." *Id.* at *4.  Thus, it was "aware of [plaintiff's] objective to join all non-exempt, hourly employees that have worked for [it] during the statutory period." *Id.*

Numerous other courts have arrived at similar outcomes, tolling the statute of limitations while the parties briefed conditional certification and during the period when the courts took those motions under consideration.  *See*, *e.g.*, *Holliday v. J S Exp. Inc.*, 2013 WL 2395333, at *8 (E.D. Mo. May 30, 2013) (tolling statute of limitations "for the time necessary to consider this pre-trial Motion [for conditional certification]"); *Stransky v. HealthONE of Denver, Inc.*, 868 F. Supp. 2d 1178, 1181-82 (D. Colo. 2012) (tolling statute of limitations from date plaintiffs first requested conditional certification and notice); *Helton v. Factor 5, Inc.*, 2011 WL 5925078, at *2 (N.D. Cal. Nov. 28, 2011) (tolling statute of limitations "until such time as the Court renders a decision on Plaintiffs' motion for conditional FLSA certification"); *Israel Antonio-Morales v. Bimbo's Best Produce, Inc.*, 2009 WL 1591172, at *1 (E.D. La. Apr. 20, 2009) (collecting cases for proposition that "[c]ourts routinely grant equitable tolling in the FLSA collective action

context to avoid prejudice to actual or potential opt-in plaintiffs that can arise from the unique procedural posture of collective actions").

It is particularly appropriate to toll the statute of limitations here, where Defendant has filed a motion to dismiss (and are expected to request a ruling on that motion prior to the ruling on this motion). There is no reason to penalize the potential collective action members by allowing their statute of limitations to run (and potentially expire) while the parties await a ruling from the Court on Defendant's motion to dismiss. *Compare Beauperthuy v. 24 Hour Fitness USA, Inc.*, 2007 WL 707475, at *8 (N.D.Cal. Mar. 6, 2007) (tolling statute of limitations because "it would be unfair or unjust" to the collective action members to truncate their potential recovery through no fault of their own or through the fault of the named plaintiffs).

This is particularly true where tolling would not prejudice Defendant. "Statutes of limitations are designed to ensure fairness to defendants and to notify them of claims that they must defend before the claims grow stale." *Partlow v. Jewish Orphans' Home of Southern Cal., Inc.*, 645 F.2d 757, 761 (9th Cir. 1981). Here, Defendant has known of this claim and that Plaintiff intends to pursue a collective action since the day they received the Complaint. Thus, tolling the collective action members' claim during the pendency of this motion would not unfairly surprise Defendant, nor would it subject it to liability of which they were unaware. In these circumstances, tolling is certainly appropriate. *See, e.g.*, *Small*, 2013 WL 3043454, at *4 (equitable tolling granted; "[defendant] is not unfairly prejudiced because the potential scope of its liability was known when the Complaint was filed"); *Stickle v. SCIWestern Market Support Center, L.P.*, 2008 WL

4446539, at *22 (M.D. Fla. 2008) (equitable tolling would not prejudice defendant where defendant was on notice of potential liability from the date the suit was filed); *Baden-Winterwood v. Life Time Fitness*, 484 F. Supp. 2d 822, 829 (S.D. Ohio 2007) (equitable tolling would not prejudice defendant where it "had full knowledge that the named [p]laintiff brought the suit as a collective action on the date of the filing" and was "[t]hus . . . fully aware of its scope of potential liability").

## Conclusion

This case is aptly suited for notice under § 216(b).  Accordingly, for the reasons set forth here, Plaintiffs respectfully ask that the Court:

(1) conditionally certify this case as a collective action consisting of two overlapping classes:

>   (a) all individuals who have participated in Defendant's Driver Training Program since December 22, 2013; and

>   (b) all individuals who have executed Driver Employment Contracts with Defendant since December 22, 2013;

(2) order Defendant to produce the names and addresses of the conditionally certified collective action members within fourteen (14) days after the Court issues its decision; and

(3) order Plaintiffs to submit a proposed form of notice to opt-in class members within fourteen (14) days after the Court issues its decision.

Respectfully submitted,

JUAN CARLOS MONTOYA, on behalf of himself and all others similarly situated,

By their attorneys,


/s/ Rachel Smit
Hillary Schwab, BBO #666029
Rachel Smit, BBO #688294
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
(617) 607-3260
www.fairworklaw.com
Email: hillary@fairworklaw.com,
rachel@fairworklaw.com

Andrew S. Schmidt, Esq.
*Admitted pro hac vice*
Andrew Schmidt Law, PLLC
97 India Street
Portland, ME 04101
207-650-0320
Email: andy@maineworkerjustice.com

Dated: December 22, 2016


## CERTIFICATE OF SERVICE

I certify that I served a true copy of this document by electronic filing on all

counsel of record in this case on December 22, 2016.


/s/ Rachel Smit
Rachel Smit

20

## <u>CERTIFICATE OF CONFERENCE</u>

I certify that I conferred with counsel for Defendant regarding this motion and the relief requested herein on December 22, 2016.  She stated that Defendant does not assent to this motion.


  /s/ Rachel Smit
Rachel Smit