UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                              )
JUAN CARLOS MONTOYA,                          )
                                              )
        Plaintiff,                            )
                                              )
        v.                                    )        Civil Action No. 16-10095-PBS
                                              )
CRST EXPEDITED, INC.,                         )
                                              )
        Defendant.                            )
_____)

REPORT AND RECOMMENDATION ON DEFENDANT'S
MOTION TO DISMISS OR TRANSFER VENUE
[Docket No. 7]

January 12, 2017

Boal, M.J.

        Plaintiff Juan Carlos Montoya brings this putative class action on behalf of himself and of

individuals who have worked as drivers for defendant CRST Expedited, Inc.  Montoya alleges,

inter alia, that CRST has failed to pay him and other drivers wages that they are owed, and has

taken unlawful deductions from their pay, in violation of the Fair Labor Standards Act ("FLSA")

and Iowa law.  CRST has moved to dismiss the action based on a forum selection clause in the

parties' contract or, in the alternative, for a transfer to the United States District Court for

Northern District of Iowa pursuant to 28 U.S.C. § 1404(a).  Docket No. 7.[1]  For the following

reasons, the Court recommends that the District Judge assigned to this case transfer this action to

the United States District Court for the Northern District of Iowa.

_____

[1] On April 19, 2016, the District Court referred this case to the undersigned for full pretrial
management, including report and recommendation on dispositive motions.  Docket No. 15.

## I.    PROCEDURAL BACKGROUND

On January 21, 2016, Montoya filed his complaint in this action.  Docket No. 1.  On March 24, 2016, CRST filed the instant motion to dismiss.  Docket No. 7.  Montoya filed his opposition on April 15, 2016.  Docket No. 13.  On May 5, 2016, CRST filed a reply.  Docket No. 20.  The Court heard oral argument on January 11, 2017.

## II.    FACTUAL BACKGROUND

### A.    Scope Of The Record

In this circuit, a motion to dismiss based on a forum selection clause must be treated as a motion to dismiss for failure to state a claim under Rule 12(b)(6).  Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009) (citations omitted).  Thus, the Court "must accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory."  Id. (citing LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 508 (1st Cir. 1998)).

In addition, under Rule 12(b)(6) the Court may properly consider only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken.  Id. (citations omitted).  Courts have made narrow exceptions for documents the authenticity of which are not disputed by the parties, for official public records, for documents central to plaintiffs' claim or for documents sufficiently referred to in the complaint.  Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).  Consideration of other materials is generally forbidden unless the motion is properly converted into one for summary judgment.  Id.

Here, Montoya has submitted an affidavit in support of his opposition to CRST's motion to dismiss. Docket No. 13-1. The affidavit, however, does not fall under any of the exceptions listed above. Accordingly, the Court declines to consider it for purposes of this report and recommendation.

B.     Facts[2]

CRST hired Montoya to transport goods in interstate commerce. Complaint ¶ 14. CRST recruited Montoya by promising sign-on bonuses in communications that also reference "free CDL training." Id. at ¶ 19 and Ex. B.

CRST requires its drivers to complete what it calls a "Driver Training Program." Complaint ¶ 20. On or about October 13, 2014, CRST and Montoya entered into a Pre-Employment Driver Training Agreement (the "Training Agreement"). Ex. C to Complaint. The Training Agreement describes the Driver Training Program as follows:

> The DTP consists of the following four (4) phases: "**Phase 1**" consists of driver training at the Educational Facility; "**Phase 2**" is CRST's orientation program held at a site selected by CRST; "**Phase 3**" is CRST's finishing school consisting of hands on over-the-road driver training with a CRST lead driver; and "**Phase 4**" is CRST's professional development program, which consists of specialized class room training and a mentoring program conducted by CRST's operations transition team. Phase 3 and Phase 4 will be conducted only if [Montoya] and CRST sign the Driver Employment Contract.

Training Agreement, Ex. C, § 2.

CRST requires its drivers to attend the Phase 1 driver training without regard to whether or not the drivers need this training. Complaint ¶ 22. Drivers who already possess a

---

[2] Because this case is before the Court on a motion to dismiss, the Court takes as true all well-pleaded allegations in the complaint and draws all reasonable inferences in Montoya's favor. See Morales-Tañon v. P.R. Elec. Power Auth., 524 F.3d 15, 17 (1st Cir. 2008).

Commercial Driver's License ("CDL") are required to complete training of the same duration and expense as drivers that do not already possess a CDL.  Id.

Drivers are presented with and asked to sign the Training Agreement only after they travel, often long distances, to the Educational Facility.  Id. at ¶ 23.  Drivers are not paid for Phase 1 driver training at the Educational Facility.  Id. at ¶ 24.  In addition, CRST requires drivers to pay a nonrefundable fee of approximately $50.00 for attending the mandatory Phase 1 training.  Id. at ¶ 25.

After completing Phase 1 at the Educational Facility, drivers are required to complete a CRST orientation during Phase 2.  CRST does not pay drivers at all for the Phase 2 training.  Id. at ¶ 27.  Moreover, during Phases 1 and 2, drivers incur a debt to CRST for attending the required training and for other expenses purportedly related to the training, including costs for lodging, transportation, and physical and drug screens.  Id. at ¶ 28.  CRST does not inform drivers of the exact or even approximate amount of debt that they are incurring by attending the mandatory Phase 1 training.  Id. at ¶ 26.  The Training Agreement states only that the amount drivers will be required to repay CRST "will equal or exceed the sum of $2,000."  Id. at ¶ 29; Training Agreement, § 11(a).

The Training Agreement also provides that:

> b.        If [Montoya] is dismissed or withdraws from the DTP prior to commencing Phase 3, then [Montoya] will owe and must pay to CRST the entire amount of CRST's advances under sections 9 and 10.  The amount owed by Student to CRST under this section 11.b will be immediately due and payable upon [Montoya's] dismissal or withdrawal from the DTP and will accrue interest from such date at a rate equal to the lesser of 1.5% per month or the maximum rate permitted by applicable federal and state usury laws.

> c.        [Montoya] acknowledges and understands that the terms of the CRST Driver Employment Contract that [Montoya] will be required to

execute in order to be employed by CRST include, among others, the
following:

> (1)     Following [Montoya's] completion of Phase 3 and the first week
> of Phase 4, and when [Montoya] is qualified as a company driver (i.e., in
> the driver's sixth week of employment) CRST shall begin to deduct from
> [Montoya's] weekly pay the amount of CRST's advances for Phase 1
> expenses (pursuant to Section 9 above), up to a maximum amount of Forty
> Dollars ($40.00) per week, until the entire sum advanced by CRST for the
> payment of such expense items are paid in full.

> (2)     If during the initial eight (8) month term of [Montoya's]
> employment either (a) [Montoya] breaches the Driver Employment
> Contract, or (b) [Montoya's] employment is terminated for due cause, then
> [Montoya] will owe and immediately must pay to CRST the following sum:
> (i) $3,950, plus (ii) the amounts advanced by CRST on behalf of [Montoya]
> (pursuant to section 9) for [Montoya's] physical and drug screen expenses,
> Lodging Cost and Transportation Cost incurred during Phase 1 that
> [Montoya] has not yet repaid via deductions from weekly pay pursuant to
> section 11.c(1), (iii) plus interest commencing as of the first day of
> employment under the Driver Employment Contract at a rate equal to the
> lesser of 1.5% per month or the maximum rate permitted by applicable
> federal and state usury laws.

Training Agreement, § 9(b)-(c).

After completing Phase 2, drivers are presented with and asked to sign a Driver

Employment Contract (the "Employment Contract"). Complaint ¶ 35. On or about October 28,

2014, Montoya executed the Employment Contract. Ex. D to Complaint. The term of the

Employment Contract was ten months. Employment Contract, § 3. During the term of the

Employment Contract, employment could be terminated only (1) by CRST with or without due

cause; (2) by mutual agreement of the parties, or (3) upon the death of Montoya. Id. at § 4.

The Employment Agreement contains the clause referenced above regarding deduction of

a maximum of $40 per week from Montoya's paycheck for amounts advanced by CRST. Id. at §

7(a). However, the provision regarding payment to CRST in the event of breach or termination

of the Employment Contract prior to the expiration of the term is different than that contained in

the Training Agreement:

> If during the Term either (1) [Montoya] breaches this Contract, or (2) [Montoya's] employment is terminated for Due Cause, then [Montoya] will owe and immediately must pay to CRST the following sum: (i) $6,500, plus (ii) the amounts advanced by CRST on behalf of [Montoya] (pursuant to Section 9 of the Pre-Employment Driver Training Agreement) for [Montoya's] DOT physical and drug screen expenses, Lodging Cost and Transportation Cost incurred during Phase 1 that [Montoya] has not yet repaid via deductions from weekly pay pursuant to this section 7(a), plus (iii) interest accruing as of the Effective Date at a rate equal to the lesser of 1.5% per month or the maximum rate permitted by applicable federal and state usury laws. [Montoya] hereby authorizes CRST to deduct the amount due under this section 7.b, if any, from the compensation amounts otherwise due to [Montoya] pursuant to Section 6 upon the termination of [Montoya's] employment. In the event it is necessary for CRST to employ a collection agency or legal counsel to enforce [Montoya's] obligation under this section 7.b, CRST shall be entitled to recover from [Montoya] such enforcement costs and expenses, including attorneys' fees.

Employment Contract, § 7(b). There is no explanation for what the $3,950 or $6,500 amounts

are based on, nor is there any explanation for the increase in the amount from the Training

Agreement to the subsequent Employment Contract. Complaint ¶ 40.

The Employment Contract provides that disputes between the parties be litigated in Iowa:

> GOVERNING LAW AND VENUE. CRST and [Montoya] hereby agree that this Contract and its construction and interpretation shall at all times and in all respects be governed by the laws of the State of Iowa, and any claim, litigation, or dispute arising from or related to this Contract shall be litigated in the appropriate federal or state court located in Cedar Rapids, Iowa. [Montoya] hereby consents to personal jurisdiction and venue in such court.

Employment Contract, § 13.

During Phase 3, drivers work with another driver, performing work for CRST, including

driving, helping the other driver, and loading and unloading the truck. Id. at ¶ 42. During Phase

3 and Phase 4, drivers are paid a rate per mile for time when they are driving but are not paid for

time when the truck is not moving, including loading and unloading time, and are not paid for time when the other driver is driving the truck.  <u>Id.</u> at ¶ 43.  Montoya alleges that, as a result, drivers are often paid less than the federal minimum wage for all hours worked.  <u>Id.</u> at ¶ 44.

Montoya also alleges that CRST's deductions from drivers' paychecks are improper and invalid.  <u>Id.</u> at ¶ 48.  In addition, he alleges that the deductions constitute unlawful kickbacks to CRST and are prohibited by the FLSA and state law.  <u>Id.</u> at ¶¶ 53, 54.

Montoya alleges that the $6,500 required repayment of purported expenses in the event of breach or termination is well in excess of the $1,500 actually spent by CRST on lodging and other costs.  <u>Id.</u> at ¶¶ 69, 77, 78.  Finally, Montoya alleges that the interest charged by CRST is in excess of that allowed by Iowa law.

The Complaint contains four counts: (1) violations of the FLSA; (2) violations of the Iowa Wage Payment Collection Law; (3) violations of the Iowa Private Right of Action for Consumer Frauds Act; and (4) violations of Iowa usury laws.

III.  <u>ANALYSIS</u>

A.  <u>Standard Of Review</u>

A complaint must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Id.</u>  "The plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

Id.

In assessing the sufficiency of the complaint, "an inquiring court must first separate wheat from chaff; that is, the court must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Guadalupe-Baez v. Pesquera, 819 F.3d 509, 514 (1st Cir. 2016) (citing Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)).  The Court must then determine "whether the well-pleaded facts, taken in their entirety, permit 'the reasonable inference that the defendant is liable for the misconduct alleged.'"  Id. (citations omitted).

> B.     The Complaint Does Not State A Plausible Claim
>        That The Forum Selection Clause Is Unenforceable

"It is well established that forum selection clauses 'are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances.'"  Rivera, 575 F.3d at 18 (quoting M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972)).  Therefore, a forum selection clause should be enforced unless the resisting party can show that:

> (1) the clause was the product of 'fraud or overreaching';
>
> (2) 'enforcement would be unreasonable and unjust';
>
> (3) proceedings 'in the contractual forum will be so gravely difficult and inconvenient that [the party challenging the clause] will for all practical purposes be deprived of his day in court'; or
>
> (4) 'enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision.'

Claudio-De Leon v. Sistema Universitario Ana G. Mendez, 775 F.3d 41, 48-49 (1st Cir. 2014) (citing Rafael Rodriguez Barril, Inc. v. Conbraco Indus., Inc., 619 F.3d 90, 93 (1st Cir. 2010)).

Montoya argues that the forum selection clause is unenforceable based on the following facts:

- The Employment Contract containing the forum selection clause was presented to him unexpectedly, after he had already traveled halfway across the country and had spent two weeks in training and orientation;

- The forum selection clause was not included in the Training Agreement signed by Montoya at the beginning of his training, prior to the accumulation of the alleged debt;

- Montoya had no choice but to sign the Employment Contract so that he could start working off the thousands of dollars of debt that CRST claimed he owed;

- The Training Agreement contained misrepresentations about the terms of the Employment Contract; namely, the length of the contract (eight versus ten months) and the amount that Montoya would owe upon termination ($3,950 versus $6,500);

- The Employment Contract containing the forum selection clause was a contract of adhesion, the terms of which Montoya had no opportunity to negotiate;

- There is gross inequality in the parties' bargaining power; and

- CRST leveraged Montoya's vulnerable bargaining position – his accumulation of debt, his difficulty in returning home half-way across the country, and his limited English comprehension, to obtain his signature on the Employment Contract containing the forum selection clause.

Docket No. 13 at 11-12.  CRST correctly points out that Montoya's allegations regarding the enforceability of the Employment Contract are largely contained in his affidavit, which, as discussed above, the Court may not consider in deciding the motion to dismiss.  Docket No. 20 at 5-6.  However, several of the facts supporting Montoya's claim that the forum selection clause is

unenforceable are in fact contained in the Complaint and in the exhibits attached to the Complaint or are reasonable inferences that can be made from the facts alleged in the Complaint.

The Complaint alleges that CRST recruited Montoya by promising sign-on bonuses in communications that also reference free training. Complaint ¶ 19 and Ex. B. CRST then presented and asked Montoya to sign the Training Agreement only after he traveled a long distance to the Educational Facility. Complaint ¶ 23. Contrary to the representation that training would be free, the Training Agreement provides that Montoya would have to reimburse CRST for training and other expenses, although CRST did not disclose the exact amounts that Montoya would be required to repay. Complaint ¶¶ 28, 29, 32. After completing the Phase 2 training, Montoya was then presented with an Employment Contract, which contained terms different from the representations in the Training Agreement, including the addition of a forum selection clause. Complaint ¶¶ 36, 38, 39, 40. It is reasonable to infer that, at that point, Montoya felt compelled to sign the Employment Contract or he would immediately be required to pay CRST thousands of dollars for lodging, transportation, and tuition advances. See Training Agreement, § 11(b).

Montoya's allegations, however, go to the contract as a whole and are not specific to the forum selection clause. A party seeking to avoid enforcement of a forum selection clause must show that the inclusion of the clause itself into the agreement was improper; it is insufficient to allege that the agreement as a whole was improperly procured. See, e.g., LaCross v. Knight Transportation, Inc., 95 F. Supp. 3d 1199, 1204 (C.D. Cal. 2015); Intercall Commc'ns, Inc. v. Instant Impact, Inc., 376 F. Supp. 2d 155, 160 (D.P.R. 2005). Montoya does not allege, for example, that CRST misled him specifically as to the forum selection clause or that the forum selection clause itself was the product of CRST exploiting its overwhelming bargaining power.

Accordingly, the Court finds that Montoya has not plausibly alleged that the forum selection clause is unenforceable.

      C.    <u>The Forum Selection Clause Applies To Montoya's Claims</u>

Montoya argues that, even if the forum selection clause is enforceable, his claims are not covered by the clause. Docket No. 13 at 5-9. The Court disagrees.

"[I]t is the language of the forum selection clause itself that determines which claims fall within its scope." <u>Carter's of New Bedford, Inc. v. Nike, Inc.</u>, 790 F.3d 289, 293 (1st Cir. 2015) (quoting <u>Rivera</u>, 575 F.3d at 19). In this case, the forum selection clause applies to "any claim, litigation, or dispute arising from or related to [the Employment Contract]." Employment Contract, § 13. Disputes "arising from" an agreement "must have their inception in the agreement itself, instead of merely being related to the agreement or the relationship of the parties." <u>Chebotnikov v. LimoLink, Inc.</u>, 150 F. Supp. 3d 128, 131 (D. Mass. 2015). "[O]nly disputes that are sourced in the terms of the agreement" arise from the agreement. <u>Id.</u>

In contrast, the term "relating to" is much broader and means only "connected by reason of an established or discoverable relation." <u>Bagg v. HighBeam Research, Inc.</u>, 862 F. Supp. 2d 41, 45 (D. Mass. 2012) (citing <u>Huffington v. T.C. Group, LLC</u>, 637 F.3d 18, 22 (1st Cir. 2011)). "As a result, courts have held that tort and statutory claims may 'relate to' a contract and fall within the scope of a forum selection clause, even if the complaint contains no explicit contract claims." <u>Id.</u> (citations omitted).

While Montoya's claims are not dependent on the Employment Contract, they are "related to" it. Indeed, Montoya alleges that several of the terms of the Employment Contract violate the FLSA and Iowa law. For example, the Employment Contract provides for certain deductions from Montoya's wages, <u>see</u> Employment Contract at § 7(a), which deductions

Montoya alleges violate the FLSA and the Iowa Wage Payment Collection Law.  Complaint ¶¶ 48-54.  In addition, the Employment Contract requires Montoya to repay CRST for advancements for lodging, transportation and tuition expenses.  Employment Contract, § 7. Pursuant to the terms of the Employment Contract, repayment of those advances is subject to an interest rate of 1.5% per month, or 18% per year, which Montoya alleges violates Iowa usury laws.  Complaint ¶¶ 64, 67 and Count IV.  Accordingly, the Court finds that Montoya's claims fall within the broad scope of the forum selection clause.

      D.      The Court Recommends That The District Judge
              Transfer This Case To The Northern District Of Iowa

      "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  The Supreme Court has identified a motion to transfer under 28 U.S.C. § 1404 as the appropriate mechanism for enforcement of a forum selection clause that points to a particular federal district. Kebb Mgmt., Inc. v. Home Depot U.S.A., Inc., 59 F. Supp. 3d 283, 286 (D. Mass. 2014) (citing Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Texas, 134 S. Ct. 568, 579 (2013)). Thus, "[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause."  Atl. Marine, 134 S. Ct. at 581; see also id. (a forum selection clause should "be given controlling weight in all but the most exceptional circumstances."); Kebb Mgmt., Inc., 59 F. Supp. 3d at 287 ("In the vast majority of cases when a forum-selection clause is included, a § 1404(a) motion to transfer will be allowed.").

      Here, the forum selection clause states that claims within its scope must be litigated in the "appropriate federal or state court located in Cedar Rapids, Iowa."  Employment Agreement, §

13.  The appropriate federal court in Cedar Rapids, Iowa is the United States District Court for

Northern District of Iowa.  Accordingly, the Court recommends that the District Court transfer

this action to the United States District Court for the Northern District of Iowa.[3]

## IV.   RECOMMENDATION

For the foregoing reasons, this Court recommends that the District Judge assigned to this

case grant in part and deny in part CRST's motion to dismiss or, in the alternative, to transfer the

case and transfer this action to the United States District Court for the Northern District of Iowa.

## V.   REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any

party who objects to these proposed findings and recommendations must file specific written

objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report

and Recommendation.  The written objections must specifically identify the portion of the

proposed findings, recommendations, or report to which objection is made, and the basis for such

objections.  See Fed. R. Civ. P. 72.  The parties are further advised that the United States Court

of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P.

72(b) will preclude further appellate review of the District Court's order based on this Report

and Recommendation.  See Phinney v. Wentworth Douglas Hospital, 199 F.3d 1 (1st Cir. 1999);

Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983

---

[3] In its reply, CRST argues that if Montoya wishes to refile this action in Iowa, he may do so, "but there is no reason for this Court to do his work for him."  Docket No. 20 at 7.  This is a curious argument given that in its original moving papers, CRST requested, in the alternative, that the Court transfer the case to the United States District Court for the Northern District of Iowa.  Docket No. 8 at 11-12.

F.2d 343 (1st Cir.1993).

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge