1       IN THE UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF MASSACHUSETTS

2

3   JUAN CARLOS MONTOYA on behalf of     )
    himself and all others similarly    )
4   situated,                           )
                                        )
5               Plaintiff               )   CA No. 16-10095-PBS
                                        )   Pages 1 - 21
6          -VS-                         )
                                        )
7   CRST EXPEDITED, INC.,               )
                                        )
8               Defendant               )

9

10                      **HEARING**

11        BEFORE THE HONORABLE PATTI B. SARIS
           UNITED STATES CHIEF DISTRICT JUDGE

12

13

14

15

16                          United States District Court
                            1 Courthouse Way, Courtroom 19
17                          Boston, Massachusetts  02210
                            February 14, 2017, 9:13 a.m.

18

19

20

21

22
                      LEE A. MARZILLI
23                 OFFICIAL COURT REPORTER
                United States District Court
24              1 Courthouse Way, Room 7200
                    Boston, MA  02210
25                    (617)345-6787

APPEARANCES:

RACHEL J. SMIT, ESQ., Fair Work, P.C., Suite 450, 192 South Street, Boston, Massachusetts, 02111, for the Plaintiff.

GREGORY P. HANSEL, ESQ., Preti Flaherty Beliveau & Pachios, LLP, One City Center, P.O. Box 9546, Portland, Maine, 04112-9546, for the Defendant.

DANIEL R. SONNEBORN, ESQ., Preti Flaherty Beliveau & Pachios, LLP, 60 State Street, Suite 1100, Boston, Massachusetts, 02109, for the Defendant.

<u>P R O C E E D I N G S</u>

1          

2    THE CLERK:  Court calls Civil Action 16-10095,

3 Montoya v. CRST Expedited, Inc.  Could counsel please

4 identify themselves.

5    MS. SMIT:  Rachel Smit for plaintiff, Juan Carlos

6 Montoya, your Honor.

7    MS. HANSEL:  Good morning, your Honor.  Greg

8 Hansel for defendant, CRST Expedited, Inc.

9    MS. SONNEBORN:  Good morning, your Honor.  Dan

10 Sonneborn for defendant as well.

11    THE COURT:  Welcome, and let me start off by

12 saying thank you for being on time.  It was brutal traffic

13 out there, and I know this was a short order, but I didn't

14 want to hold this case up too much.

15    I've got a concern with the Magistrate Judge's

16 order.  I almost never do.  Jenny Boals is one of the finest

17 magistrate judges that there is, but procedurally I've got a

18 concern about it.  I'm reluctant to decide this based on the

19 four corners of the complaint because I don't know how you

20 show that a forum selection clause is unreasonable or

21 induced by fraud unless you go outside of the four corners.

22 And I've got this affidavit which is of concern to me, so

23 I'm just procedurally trying to figure out where to go.  I

24 could allow it to be re-pled and everything that was put in

25 the affidavit be put in the complaint.  I could just allow

1   this to go forward to summary judgment.  I mean, of course

2   Judge Boal is correct; on the motion to dismiss, you're not

3   supposed to consider something out of the four corners.

4           And so I'm looking to you for guidance rather than

5   just writing a whole opinion and then having it be re-pled.

6   I mean, I'll just try and shortcut through this thing, and

7   I'm planning on considering the affidavit.  Whether

8   procedurally I allow discovery first, I wanted to talk to

9   you.  Whether procedurally I just allow her to amend it and

10  put it in, that's the key issue.

11          MR. HANSEL:  I understand.  Your Honor, I

12  appreciate the Court's frankness in letting us know where

13  your concerns lie.  I won't belabor the point which we've

14  already briefed that, you know, our motion is under

15  Rule 12(b)(6), and therefore, you know, the Court normally

16  would be limited to the four corners and so forth.

17          THE COURT:  But then it makes it impossible for

18  the plaintiff to prove what it's supposed to prove.

19  Normally you enforce a forum selection clause, you're quite

20  right.  Normally the law is pretty tough on your part.  But

21  when I have an affidavit that says he doesn't understand

22  English well and that clause wasn't interpreted for him and

23  he didn't know about it, Paragraph, say, I think 16, even

24  apart from the duress issues, which were serious, more

25  serious than most of the cases I have because mostly

1    everybody lives around, you know, like the franchise-type

2    agreements where they're business people and that sort of

3    thing, but apart from that, he said he didn't know it was

4    there and it wasn't interpreted for him.  That's unique to

5    the forum selection clause.  So I don't know what

6    procedurally I do here.  Would you like to have discovery on

7    that point?  In other words, and then we can deal with it on

8    a summary judgment?  Do you want me to take that as true?

9    Because if I take that as true, I'm going to deny the

10   transfer.

11           MR. HANSEL:  Perhaps the best, most focused

12   procedure, your Honor, would be to open the matter for

13   discovery limited to the forum selection clause issue.

14           THE COURT:  Well, that seems a little silly just

15   because whether it's in Iowa or it's here, you're going to

16   need to do discovery, and so either way you're going to have

17   a case.  And, also, let me just add a little wrinkle that I

18   haven't delved as deeply into.  I get it that the "related

19   to" language is the broadest of all the language.  I agree

20   with that interpretation.  That's how the First Circuit and

21   other circuits have done it, but I want to think about Fair

22   Labor Standards Act causes of action as to whether there's a

23   public policy reason not to push them out to someplace

24   that's inconvenient for the worker.  Was his work here in

25   Massachusetts?

1          MR. HANSEL:  His work would have been national,

2     your Honor, because it's trucking, so he would have been an

3     over-the-road truck driver throughout the United States.

4          THE COURT:  Is he domiciled here?

5          MR. HANSEL:  I believe so.

6          MS. SMIT:  Yes, your Honor.

7          THE COURT:  I'm not sure about that one.  That's

8     always a harder, and I don't know if any cases have

9     addressed that.  Most of the cases you all cite are more

10    "relating to" cases.  And you haven't even had a chance to

11    stand up yet, but that's a harder standard to avoid because

12    it seems as if they're related.  The question is whether the

13    Fair Labor Standards Act is different.  But my heartland

14    issue is, procedurally, as soon as I got this, I was

15    concerned about not considering this affidavit.

16          MR. HANSEL:  So I think a solution that CRST would

17    propose, in light of your Honor's legitimate concerns, would

18    be to permit the defendant to take the plaintiff's

19    deposition on this allegation that the forum selection

20    clause in particular was a product of fraud, which we

21    disagree with and --

22          THE COURT:  Well, do you have a witness that would

23    say, "Yes, we interpreted the entire agreement to him out in

24    Iowa"?

25          MR. HANSEL:  I don't know, but I know of -- we

1   haven't briefed this issue, but I am aware of law to the

2   effect that if one is not a fluent English speaker and knows

3   that, one cannot merely sign English contracts that one

4   doesn't understand and escape the consequences.

5           THE COURT:  Let me put it this way:  If it wasn't

6   interpreted for him and he didn't understand it and they

7   interpreted parts but not other parts, I probably won't

8   enforce the clause.  I haven't done that case law about the

9   English.  Maybe I'm going to be dead wrong.  Maybe the First

10  Circuit has come out the other way.  But we're talking about

11  sort of low-level people in a state they don't know, and he

12  doesn't have a lot of power out there, so -- and, besides, I

13  can't resolve that based on this record.

14          So why don't I turn to plaintiffs.  I've not been

15  ignoring you.

16          MS. SMIT:  Thank you.  And thank you, your Honor,

17  for understanding the very real difference between this case

18  and sort of your traditional business-to-business contract

19  issues.  I think the cases on this point about whether or

20  not you consider external documents all demonstrate this

21  very issue about a concern for fairness to the plaintiff,

22  and so the cases resolve it in different ways.  I think one

23  way that you could resolve this easily is by looking to

24  *Watterson v. Page* where the Court considered documents under

25  some of the exceptions to this general rule that you don't

1  look at documents outside of the pleadings.  And I think

2  that the most obvious example here is the document, the

3  authenticity of which is not disputed by the parties, and

4  that's not an argument that defendant ever made, whether or

5  not this affidavit is --

6  THE COURT:  No, he hasn't had a chance to test it.

7  I mean, that's the *Watterson* I myself cited in my

8  boilerplate.  I mean, it's a different kind of situation,

9  right?  It's not an affidavit on a contested issue, is it?

10  MS. SMIT:  It was an affidavit of the defendant,

11  your Honor, but it was submitted in support of the

12  plaintiff's opposition to the defendant's motion to dismiss,

13  and the Court has some good language in there that talks

14  about the concern about looking at external evidence is that

15  the plaintiffs don't have a chance to contest the validity

16  of those documents because under 12(b)(6), you are to accept

17  all allegations as true from the complaint.

18  THE COURT:  Well, let me put it this way:  If you

19  were to incorporate this affidavit into -- if I let you

20  replead it and incorporated it in, I would deny this motion

21  to dismiss.  However, that only gets you so far because then

22  they have the right the test the truth of the assertions and

23  then move for summary judgment, or move again because I

24  would do it without prejudice.  So I'm trying to move it

25  ahead and not go through gamesmanship.

1          MS. SMIT:  Sure.

2          THE COURT:  Okay, I'm just telling you what's

3    going to happen here.  You incorporate it.  I allow you to

4    replead it.

5          MS. SMIT:  Right.

6          THE COURT:  You incorporate the affidavit saying,

7    "They only read part of the agreement to me and not the part

8    about the forum selection clause, and I didn't understand

9    English."  That's going to be enough to get you to Step B.

10          He then takes the deposition.  We've all been

11    there.  Then he says -- he moves again under either this

12    line of cases I'm not familiar with with the Spanish versus

13    English, or he gives up on that issue.

14          And another issue becomes this FLSA on -- were any

15    of the cases -- I've had only a very brief time to be able

16    to jump into this, so I wanted to first get to the procedural

17    point.

18          MS. SMIT:  Sure.

19          THE COURT:  Are the Fair Labor Standards Act cases

20    that are joined with contract cases, what's happening on

21    forum selection clauses?  Are there other cases out there?

22          MS. SMIT:  Let me get to that point in a second.

23    I think, like, if we play out the scenario where there's

24    some discovery into the allegations in the affidavit, even

25    if defendants were to then move for summary judgment, you'd

1  be considering it under the summary judgment standard, which

2  is no genuine dispute of material fact.  And I don't see

3  how, given the allegations in our affidavit, they ever can

4  win on summary judgment on those issues because we're going

5  to have credibility issues.

6          THE COURT:  They may not be unless he -- I mean, I

7  know this was a lawyer-crafted affidavit because they all

8  are, and so, I mean, he said it was interpreted from --

9          MS. SMIT:  It was interpreted for him, your Honor.

10          THE COURT:  Yes, he said that.  I noticed that

11  very carefully.  But I'm just saying, you know, you can test

12  it on cross.  So I'm inclined to allow the plaintiff's

13  deposition and --

14          MS. SMIT:  And I think that's a good example of

15  why this case should stay here because when there are

16  evidentiary issues like that, a plaintiff in his

17  circumstances where he lives here, he was recruited here by

18  CRST, it would be unfair to him to have to --

19          THE COURT:  Right, we'll do it on all issues,

20  actually, because he also wants to be a class rep, right?

21          MS. SMIT:  Yes, your Honor.

22          THE COURT:  We'll do it on all issues, and then --

23  is he the only class rep?

24          MS. SMIT:  He's the only named plaintiff, your

25  Honor.  We have some opt-in plaintiffs, but he's the only

1    named plaintiff right now.

2         THE COURT:  And I think that makes the most sense

3    to do is to take his deposition on everything.  I could just

4    set discovery here and then review the -- it also could be a

5    forum non conveniens, just a plain 1404, it may go out to

6    Iowa, if it sounds like all the key witnesses may be out

7    there.  So it's not even just the forum selection clause.

8    It may well be that if all of the witnesses and all of the

9    key events happened in Iowa, it's going to go out there

10   anyway.  But at least for right now I have to make a

11   decision about whether or not you just want to just replead

12   it, in which case I'll deny it, or whether or not you all

13   prefer to take the plaintiff's deposition here.  It's

14   convenient here.  You can make it efficient.  You can go

15   through all the causes of action and go through whether he's

16   an appropriate class rep.  We can just do it, I mean, and

17   then make a decision about where it should be and whether --

18   and do class discovery, and then we can make certain

19   decisions.

20        MS. SMIT:  I appreciate that, that suggestion,

21   your Honor.  And let me suggest that there is another way to

22   decide this issue, and that is on the "related to" issue.

23   And I think that if you look at the cases that we cite,

24   "related to" is not so broad as to include everything.  It

25   can't be so broad as to become meaningless, and CRST could

1    have drafted the forum selection clause more broadly.  It

2    could have drafted it to say all issues arising from or

3    relating to the employment relationship, but it didn't.  It

4    said related to the contract.

5           And *Pixel*, one of the cases that we cite, stands

6    for the proposition that "related to," it does not mean

7    merely implicate.  And in *Fuller*, the Northern District of

8    Illinois case cited by Judge Gorton, he makes it clear

9    that -- or the *Fuller* decision makes it clear that "related

10   to" does not merely mean germane to.  "Related to," it's

11   pretty clear from the cases and the way Judge Gorton

12   describes *Fuller* and *Pacheco* that "related to" means either

13   enforcing the terms of the agreement or that you couldn't

14   bring the claims without the existence of the contract.

15   And, quite frankly, that distinguishes this case from your

16   decision in *Huffington* where the facts were somewhat --

17   what's that?

18          THE COURT:  I always feel so old because you cite

19   a case; I have no memory of what it is.  Which one is that,

20   *Huffington* versus --

21          MS. SMIT:  *Huffington*, it's cited by the

22   defendants on appeal, and they upheld your decision.  I

23   believe that was your decision.  I hope I'm not misstating

24   that.

25          THE COURT:  It may have been.

1          MS. SMIT:  But in any case, it's *Huffington v.*
2  *TC Group*.

3          THE COURT:  Anyway, we'll look.

4          MS. SMIT:  It was decided by the First Circuit in
5  2011.  And in that case, it was very clear that the
6  plaintiff wouldn't have had any claims without the existence
7  of the agreement, and that's partly because there was a
8  statutory requirement that in order to enter into the
9  transaction, there be an agreement.  That's not the case
10 here.  We could have brought every single one of our claims
11 even if there had been no second contract, your Honor.

12          THE COURT:  Well, thank you.  I will look at that
13 again.  As I said, this has come up pretty fast, and my
14 biggest concern is, I think what I'm going to do is deny the
15 motion to dismiss without prejudice to discovery, because I
16 don't want it just sitting there while you're doing
17 discovery, rather than have you replead it.  And then I
18 think the most efficient thing to do, it would, A,
19 facilitate the class issue because wherever it happens, it's
20 going to happen, either here or in Iowa.  Second -- where
21 would it go, by the way?

22          MR. HANSEL:  Cedar Rapids, Iowa.

23          THE COURT:  Cedar Rapids?

24          MR. HANSEL:  Northern District of Iowa, Cedar
25 Rapids.

1          THE COURT:  Okay.  So, in any event, at least it

2     will be jump started.  It won't just sit here dead-ended.

3     And so we'll just get going on discovery.  And if you want

4     to move again on the forum non conveniens after we have his

5     deposition, you can do that.  In the meantime, we'll get

6     discovery going, I think is the most efficient way to do

7     this.

8          And I don't know about the "related to" issue.  I

9     remember looking into it in the past, and it's pretty darn

10    broad.  I look hard when it's Fair Labor Standards Act.  I

11    don't know of any cases that had a forum non conveniens, and

12    I don't think you cite much, right?  There may have been one

13    unpublished decision.  I mean, I haven't gone deeply into

14    that, but you're hard-pressed in a Fair Labor Standards Act

15    case to say that a forum non conveniens clause controls.

16    You're right, it overlaps some with the contract, fair

17    enough, but it's a statute -- do they allow Title VII cases?

18    Do they allow Title VII cases to be dealt with through forum

19    non conveniens clauses?

20          MR. HANSEL:  I don't know, your Honor.  In this

21    case, the plaintiff's complaint expressly relies on three

22    sections of the contract:  the paid deductions, the charges

23    for training, and the interest.  And it claims that all of

24    those violate --

25          THE COURT:  The Fair Labor Standards Act.

1          MR. HANSEL:  -- the Fair Labor Standards Act and

2     Iowa law, which, again, the choice-of-law provision is in

3     the same provision --

4          THE COURT:  Yes, it is.

5          MR. HANSEL:  -- as the forum selection clause, and

6     the plaintiff had no difficulty determining that Iowa law

7     applied and pleading Iowa law.  Yet they tried --

8          THE COURT:  Plaintiff's counsel.  Plaintiff is

9     probably an uneducated guy who primarily is at best

10    bilingual.

11         MR. HANSEL:  Fair enough, your Honor, fair enough.

12         THE COURT:  At best.  But I don't know, has anyone

13    just dealt with it, whether or not these forum non

14    conveniens clauses apply to Fair Labor Standards Act cases?

15         MR. HANSEL:  I believe we cite authority that

16    where they are inextricably intertwined, it's appropriate to

17    apply the forum selection clause, but I would have to go

18    back and review that.

19         THE COURT:  Yes, I need to look at that too.  But

20    in the meantime, I think what I'm going to do is deny the

21    motion to dismiss without prejudice to renewal of summary

22    judgment once you've had a time to test it; but I have a

23    really hard time enforcing something by somebody who speaks

24    Spanish and only certain parts were interpreted for him in

25    English.  Yikes.  Given these unique circumstances, I'm not

1    sure I even need to go into the "related" thing.

2          Now, that said, truthfully, if all the witnesses

3    are out there and that's where the locus is and that's where

4    the law is, this may end up getting transferred anyway, so I

5    view this as a short-term issue.

6          MR. HANSEL:  This purports to be a national class

7    action involving thousands of truck drivers over many years

8    and vast amounts of records in Iowa and throughout the

9    United States, plus all the witnesses in Iowa, but that's an

10   issue for later.

11         THE COURT:  Yes, it may just fall under a standard

12   1404, but I'm not willing to rule yet because I know so

13   little about the case, and I think what I need to do is have

14   us focus on -- procedurally the Magistrate Judge is correct,

15   but I'm not willing to throw it out on that procedural

16   ground because it's so easy to just replead it, and then

17   I've got a problem.  And I don't want to do that because

18   then you get to take discovery, and I'm right back where I

19   started, so why go through the rain dance?  And it's without

20   prejudice because I may end up transferring it out there

21   eventually anyway.  I get your point on "related," but

22   unless FLSA is different, it's related.  FLSA may be

23   different, and that's what I need to look up.

24         MS. SMIT:  Okay, and we'd be happy to provide

25   additional briefing for you.

1          THE COURT:  And there may be relevant case law

2     where there's a strong public policy.

3          MS. SMIT:  The cases that we cited relevant to the

4     FSLA all find that the claims are not related to or arising

5     out of the contract, and that's how the courts get around

6     it, but there may be some additional cases out there that

7     I'm not familiar with that are specifically about the nature

8     of FLSA claims.

9          THE COURT:  Yes, because they all hinge on the

10    relatedness, and I may end up delving really deeply into

11    that eventually, but at least based on Paragraph 16, I

12    wouldn't enforce it.

13         MS. SMIT:  Thank you, your Honor.

14         THE COURT:  If it wasn't interpreted to him and he

15    didn't understand it and the rest of it was, how would he be

16    on notice to even get an interpreter, right?  I mean, in a

17    way we're all playing with a fiction anyway because he's

18    uneducated and illiterate probably.  Not -- he can probably

19    read, but we're playing with a fiction.  But at the very

20    least, the fiction is that he read it.

21         MR. HANSEL:  Well, there is a clause in the

22    contract that in fact says that "Employee acknowledges

23    having read the terms of this contract and had the

24    opportunity to have the terms used herein and their

25    consequences explained by employee's attorney prior to

1  signing."  You know, it just raises a serious question

2  about, how far can someone go saying they're forced to sign

3  something, they had no choice but to sign something, they

4  didn't understand it?  Isn't that reckless to sign something

5  when you know you don't understand it?

6          THE COURT:  No, I understand the argument, but can

7  I just say this:  He's a Spanish-speaking guy out there

8  who's told he has to pay his own fare home if he doesn't

9  sign it, and they do purport to interpret it but only part

10  of it.  It's at least a closer call than most of my forum

11  non conveniens cases.  So I don't view this as something --

12  well, let me ask you this:  Have you talked about

13  settlement?  Do you want to try and go to a settlement

14  thing, or are we too far away from all of that?  Because

15  whether it's here or in Iowa, the case is likely going

16  forward, right?  I mean --

17          MS. SMIT:  I think it's been too early to talk

18  about settlement.

19          MR. HANSEL:  We have not.

20          THE COURT:  All right, so when do you want for

21  discovery, class discovery and merits discovery?  And then

22  you can move at any time as soon as you have his deposition.

23          MR. HANSEL:  We could start now.

24          THE COURT:  Okay.

25          MS. SMIT:  I think three to four months would be

1  appropriate.

2          MR. HANSEL:  For full discovery?

3          THE COURT:  For full discovery?

4          MS. SMIT:  For class discovery.

5          THE COURT:  Well, why don't we just do the

6  discovery?  You have to do it either here or in Iowa.  Do

7  you want to just say all discovery to be complete by

8  August 31?

9          MS. SMIT:  Sure.

10          MR. HANSEL:  Your Honor, I'm not sure how many

11  years back the plaintiff intends to go with the alleged

12  violations.

13          THE COURT:  What's it's, two or three depending

14  on --

15          MS. SMIT:  And we would ask you to allow us to --

16  the class cert motion that's pending, your Honor, asks for

17  us to issue notice to class members going back to three

18  years from December -- I believe it was either the -- I

19  think it was the 23rd maybe when we filed the motion.

20          THE COURT:  All right, so three years back.

21          MS. SMIT:  Yes.

22          THE COURT:  And if you can't, then you'll move to

23  continue it.  I'm assuming this will come up again for

24  resolution before that, but at least we can be chugging

25  along with the basic discovery.  So do you want to say by

1   August 31, fact discovery?

2           MS. SMIT:  That makes sense to me.

3           MR. HANSEL:  Yes.

4           THE COURT:  And do we even need expert discovery

5   except possibly on damages?

6           MR. HANSEL:  -- the expert issues, your Honor.

7           MS. SMIT:  Yeah, it's possible.  I haven't thought

8   through that yet.

9           THE COURT:  I tell you what, given that, why don't

10  you two work out a discovery schedule.

11          MS. SMIT:  And propose it to you?

12          THE COURT:  And propose it.  I'll sign it.  In the

13  meantime, you can move for partial summary judgment at any

14  time on the forum non conveniens clause.  I think that's

15  sort of how I'd like to go.  I mean, the Magistrate Judge

16  did an excellent job in sort of talking about the basic law

17  in this area as well as the "related to" clause.  So my

18  biggest concern, as I've mentioned now four times, is that

19  procedurally, how do I get this information before me in a

20  way that's fair to you and not just -- so I think this makes

21  the most sense.  We'll go here.  And I think it's premature

22  to talk about settlement, but when I come back in here, I

23  don't even know if it's an appropriate area of settlement.

24  You may be completely within your rights.  Don't know.  So,

25  in any event, I don't know Iowa law.  For lots of reasons,

1   it may end up out there anyway, but at least we can get this

2   going.  And, you know, you give some deference to the

3   plaintiff's choice of a forum unless there's a reason not

4   to, so --

5         MS. SMIT:  Thank you, your Honor.

6         THE COURT:  All right, thank you very much.

7         MR. HANSEL:  Thank you, your Honor.

8         THE COURT:  Have a lovely Valentine's Day.

9         MR. HANSEL:  Yes, yes.

10        MS. SMIT:  You too.

11        THE CLERK:  All rise.

12        (Adjourned, 9:38 a.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>C E R T I F I C A T E</u>

UNITED STATES DISTRICT COURT )
DISTRICT OF MASSACHUSETTS    ) ss.
CITY OF BOSTON               )

        I, Lee A. Marzilli, Official Federal Court

Reporter, do hereby certify that the foregoing transcript,

Pages 1 through 21 inclusive, was recorded by me

stenographically at the time and place aforesaid in Civil

Action No. 16-10095-PBS, Juan Carlos Montoya, et al v. CRST

Expedited, Inc., and thereafter by me reduced to typewriting

and is a true and accurate record of the proceedings.

        Dated this 12th day of April, 2017.

                /s/ Lee A. Marzilli
                _____
                LEE A. MARZILLI, CRR
                OFFICIAL COURT REPORTER