EXHIBIT 1

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

———————————————————————— )
JUAN CARLOS MONTOYA, on behalf of )
himself and all others similarly situated, )
)
Plaintiffs, )
)
v. )    **JURY DEMANDED**
)
CRST EXPEDITED, INC. and CRST )    Civil Action No.
INTERNATIONAL, INC., )    1:16-cv-10095-PBS
)
Defendants. )
———————————————————————— )

## FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

### I.   INTRODUCTION

1.      This is an action brought on behalf of individuals who have worked for

Defendants CRST Expedited, Inc. and CRST International, Inc. as drivers and have not

been paid all wages that they are owed and have had unlawful deductions taken from

their pay, in violation of the federal Fair Labor Standards Act (FLSA).  Named Plaintiff

Juan Carlos Montoya brings this action on behalf of himself and all other similarly

situated individuals and seeks recovery of all unpaid wages and unlawful deductions.

Plaintiffs also seek liquidated damages, interest, costs and attorneys' fees, and all other

relief to which they are entitled.

2.      Plaintiffs also allege that Defendants intentionally violated the Iowa Wage

Payment Collection Law (IWPCL) by failing to pay the applicable statutory minimum

wage and by making unlawful deductions from their pay.  Plaintiffs seek recovery of all

unpaid wages and unlawful deductions.  Plaintiffs also seek liquidated damages, interest, costs and attorneys' fees, and all other relief to which they are entitled.

3.     On behalf of himself and others similarly situated, Plaintiff Juan Montoya brings claims under the Iowa Private Right of Action for Consumer Frauds Act, Iowa Code § 714H, and the Iowa usury laws relating to Defendants' charging their employees excessive amounts and excessive interest on amounts that Defendant claims the employees owe Defendant to reimburse it for advancing the costs of driver training and related expenses.

4.     Plaintiffs also bring claims under the Iowa Private Right of Action for Consumer Frauds Act, Iowa Code § 714H, for the following practices:  Defendants' misleading communications/advertisements to potential drivers and drivers regarding "free," "covered," and/or "sponsored" CDL training; Defendants charging substantially more to drivers for truck driving school than Defendants pay to the truck driving schools and failing to disclose this fact; Defendants' failure to disclose to potential drivers and drivers the affiliation between CRST Expedited, Inc., CRST International, Inc., and one of the truck driving schools, North American Driver Training Academy (NADTA), and Defendants' misleading communications that NADTA and Defendants are separate and not affiliated; Defendants' non-disclosure of the high drop-out rate from the CRST Expedited Driver Training Program to potential drivers before they incur several thousand dollars of debt to Defendants; Defendants' collections process, by which they aggressively pursue "debt" from drivers for driver training and related expenses and send that debt to third-party collection companies;

EXHIBIT 1

Defendants' refusal to release drivers' diplomas from CDL training programs (and refusal to allow the driver training schools to do so) unless and until the drivers either work for Defendants for eight to ten months or pay off the thousands of dollars in "debt" that Defendants claim they owe; and Defendants' aggressive enforcement of its non-competition provision, including (*inter alia*) using the drivers' "debt" as a way to attempt to lure them back to work for Defendants, informing other potential employers in the trucking industry that the drivers are still under contract with Defendants, and filing lawsuits against other trucking companies that hire drivers who Defendants claim are still under contract with them.

5.      For the claims under the Iowa Private Right of Action for Consumer Frauds Act, Iowa Code § 714H, and the Iowa usury laws, Plaintiffs seek reimbursement for all amounts that Defendants have charged to their employees for training and related expenses (whether or not those amounts have been collected on), triple damages, attorneys' fees and costs, interest, and all other relief to which they are entitled.  Plaintiffs also seek an injunction, enjoining Defendants from continuing to make deductions and/or otherwise attempting to collect these amounts from their current and former employees.

**II.      PARTIES**

6.      Plaintiff Juan Carlos Montoya is an adult resident of Boston, Massachusetts.  He worked as a truck driver for Defendants from approximately October to December 2014.  He is an "employee" of Defendants within the meaning of the FLSA and the IWPCL.

3

EXHIBIT 1

7.     The above-named Plaintiff brings this action on behalf of himself and all others similarly situated, namely all other individuals who have worked as drivers for Defendants and have not received all wages to which they are entitled and/or have been subject to the practices that Plaintiffs allege violate the Iowa Private Right of Action for Consumer Frauds Act, Iowa Code § 714H, and the Iowa usury laws, as described below.

8.     For the FLSA claims, Plaintiff brings this action on behalf of all similarly situated individuals who may choose to "opt in" to this action pursuant to the FLSA, 29 U.S.C. § 216(b).  The claims under the FLSA meet the requirements for collective action certification set forth in 29 U.S.C. § 216(b).

9.     The Plaintiff and all others similarly situated are individually covered by the FLSA because they engaged in commerce or in the production of goods for commerce.

10.    Pursuant to 29 U.S.C. § 216(b), named Plaintiff Juan Carlos Montoya consents to sue as a plaintiff under the Fair Labor Standards Act.  His consent to sue form was attached to the original Complaint as Exhibit A.  See ECF Doc. No. 1-1.

11.    For the Iowa state law claims, Plaintiff brings this action on behalf of all similarly situated individuals pursuant to Rule 23 of the Federal Rules of Civil Procedure.  The proposed class for these claims meets the requirements of Rule 23 of the Federal Rules of Civil Procedure for class certification.

12.    Defendant CRST Expedited, Inc. is an Iowa corporation that employs individuals (including Plaintiff Montoya) as drivers.  Defendant CRST Expedited, Inc.

has revenues in excess of $500,000 per year and has employed two or more persons,

including the named Plaintiff, who handled and worked on materials which had been

moved in interstate commerce.  Defendant CRST Expedited, Inc. is an "employer" of

Plaintiff Montoya and other similarly situated drivers within the meaning of the FLSA

and the IWPCL.

13.     Defendant CRST International, Inc. is an Iowa corporation that employs

individuals (including Plaintiff Montoya) as drivers.  Defendant CRST International,

Inc. has revenues in excess of $500,000 per year and has employed two or more persons,

including the named Plaintiff, who handled and worked on materials which had been

moved in interstate commerce.  The Defendant CRST International, Inc. is an

"employer" of Plaintiff Montoya and other similarly situated drivers within the

meaning of the FLSA and the IWPCL.

**III.     JURISDICTION AND VENUE**

14.     Jurisdiction is proper in this Court under 28 U.S.C. § 1331 because this

case arises under the laws of the United States.  Specifically, this action arises under the

Fair Labor Standards Act, 29 U.S.C. § 201, et seq.

15.     Plaintiff requests that this Court exercise supplemental jurisdiction over

their claims under the laws of Iowa pursuant to 28 U.S.C. § 1367.

16.     Venue is proper pursuant to 28 U.S.C. § 1391(b): the Defendants reside in

the Commonwealth of Massachusetts for venue purposes and/or are subject to the

Court's personal jurisdiction in that they have substantial contacts with and conducts

business in the Commonwealth of Massachusetts.

IV.     FACTS

      A.     **Facts relating to Defendants' corporate structure**

      17.     CRST Expedited Inc. and CRST International, Inc. are "brother/sister" companies that are owned by a holding company called Admiralty Holdings.

      18.     CRST International, Inc. is a "shared services company," which provides management services to other CRST companie, including CRST Expedited, Inc.

      19.     CRST International, Inc. provides management oversight, legal, accounting, treasury, risk management, human resources, and safety oversight services to CRST Expedited, Inc.

      20.     CRST International, Inc. is involved in decisionmaking relating to wage payment policies and payroll as to drivers for CRST Expedited, Inc.

      21.     CRST International, Inc. is involved in decisionmaking relating to the amounts charged to CRST Expedited, Inc. drivers for driver training, transportation, lodging, and other expenses and relating to debt collection.

      22.     CRST International, Inc.'s collections department handles debt collection for CRST Expedited, Inc.

      B.     **Facts relating to unpaid wages and unlawful wage deductions**

      23.     Defendants hired Plaintiff Montoya and other similarly situated drivers to transport goods in interstate commerce.

      24.     During all times relevant to this action, the named Plaintiff and all others similarly situated were employed by the Defendants in an "enterprise engaged in

commerce or in the production of goods for commerce," as defined by 29 U.S.C. §
203(s)(1).

25.     During all times relevant to this action, the named Plaintiff and all others
similarly situated were employed by the Defendants for handling and otherwise
working on goods or materials that had been moved in or were produced for commerce
by any person.

26.     Plaintiffs and all others similarly situated rendered employment-related
services for Defendants in the state of Iowa for wages.

27.     Defendants have not paid Plaintiff Montoya and other similarly situated
individuals all wages owed to them.

28.     Defendants have recruited Plaintiff Montoya and other similarly situated
drivers by promising sign-on bonuses in communications that also reference "free CDL
training," an example of which is attached to this Complaint as Exhibit A.

29.     Defendants require their drivers to complete what they call a "Driver
Training Program."

30.     The Driver Training Program has four phases, which Defendants describe
as follows in the Pre-Employment Driver Training Agreement:

> "Phase 1" consists of driver training at the Educational Facility; "Phase 2"
> is CRST's orientation program held at a site selected by CRST; "Phase 3" is
> CRST's finishing school consisting of hands on over-the-road driver
> training with a CRST lead driver; and "Phase 4" is CRST's professional
> development program, which consists of specialized class room training
> and a mentoring program conducted by CRST's operations transition
> team.

Montoya Pre-Employment Driver Training Agreement, attached as Exhibit B.

31.     Defendants require their drivers to attend the Phase 1 driver training without regard to whether or not the drivers need this training.  Drivers who already possess a Commercial Driver's License (CDL) are required to complete training of a similar duration and expense as drivers that do not already possess a CDL.

32.     Drivers are presented with and asked to sign the Pre-Employment Driver Training Agreement only after they travel, often long distances, to the Educational Facility.

33.     Drivers are not paid at all for the Phase 1 driver training at the Educational Facility.

34.     Additionally, Defendants require drivers to pay fees relating to this mandatory training during Phase 1, including a nonrefundable fee of approximately $50.00.

35.     Defendants do not adequately inform drivers of the exact or even approximate amount of the debt that they are incurring by attending the mandatory Phase 1 training.

36.     After completing Phase 1 at the Educational Facility, drivers are required to complete a CRST orientation during Phase 2.  Defendants does not pay drivers at all for the Phase 2 orientation.

37.     Moreover, during Phase 1 and Phase 2, drivers incur a debt owed to Defendants for attending this required training and for other expenses purportedly related to the training, including costs for lodging, transportation, and physical and drug screens.

38.     Defendants' Pre-Employment Driver Training Agreement says that the amounts that the drivers will be required to repay Defendant "will equal or exceed the sum of $2,000."

39.     After completing Phase 2, drivers are required to sign a Driver Employment Contract.  *See* Montoya's Driver Employment Agreement, attached as Exhibit C.

40.     Defendants' contracts provide that, if the driver does not work for Defendants for at least eight to ten months, the drivers will be required to pay Defendants for the tuition for the Educational Facility.  The amount charged to drivers is $3,950 or $6,500 (depending on which version of the contract the driver signed).

41.     Additionally, Defendants charge an excessive rate of interest on this sum that drivers owe to them.  The interest rate is described as "the lesser of 1.5% per month [*i.e.*, 18% per annum] or the maximum rate permitted by applicable federal and state usury laws."

42.     In fact, though, even though 18% per year is higher than the maximum permitted by the Iowa usury laws, Defendants charge the full 18% per year when they seek to collection on these debts.  The interest rate runs from the beginning of the driver's employment, not from the date on which the debt purportedly accrues.

43.     The amounts that Defendants charge drivers is significantly higher than the amount that Defendants pay to the Educational Facilities.

44.     Defendants pay the Educational Facilities amounts ranging from $1,400 to $2,500 per student.  Defendants do not disclose this information to the drivers.

EXHIBIT 1

45.     Additionally, under Defendant's employment contract, only Defendant may terminate the employment relationship.  Specifically, the contract provides that, during the eight-to-ten-month employment term, "Employee's employment may be terminated only for the following reasons:  (1) by CRST with or without Due Cause effective immediately, (2) by mutual agreement of CRST and Employee, or (3) upon the death of Employee."

46.     During Phase 3, drivers work with another driver, performing work for Defendant including driving, helping the other driver, loading and unloading the truck, etc.

47.     During Phase 3 and Phase 4, drivers are paid a rate per mile for time when they are driving but are not paid for time when the truck is not moving, including loading and unloading time, and are not paid for time when the other driver is driving the truck.

48.     Drivers are not paid for sleeper berth time and other "off-duty" time, even when that time exceeds eight hours and even when the drivers have not been working for more than twenty-four hours.

49.     As a result of Defendants' pay practices, drivers are often paid less than the federal minimum wage for all hours worked.

50.     Defendants also makes deductions from their drivers' paychecks for improper and invalid purposes.

51.     For example, Defendants make deductions for drug tests and physical screenings.  Defendants deducted $40 from Plaintiff Montoya's earnings for a drug test.

EXHIBIT 1

52.     The deductions Defendants make from drivers' wages often reduced drivers' earnings below minimum wage.

53.     The deductions also constitute unlawful kickbacks to Defendants.

54.     Defendants' deductions relating to furnishing board, lodging and/or other facilities exceed any reasonable and/or actual cost to Defendants of providing those facilities.

55.     For drivers who continue to work for Defendants into Phase 3 and Phase 4, they are required pay back some of the debt that Defendants claim they owe through a deduction of up to approximately $40 per week from their wages, until the entire amount is paid.

56.     For drivers who discontinue their employment at any time before completion of the contract's eight-to-ten-month term, they immediately owe the entire amount of the debt, plus the excessive interest rate.

57.     Defendants immediately pursue full repayment from those employees and often send those matters to collections.

58.     Defendants also deduct these amounts from the amounts they owe to employees in their last paychecks.

59.     However, Defendants are not entitled to repayment for these amounts, nor is it entitled to charge the excessive interest rate on these amounts.

60.     Because of the debt imposed by Defendants, the drivers do not receive their wages free and clear.

EXHIBIT 1

61.    Defendants' deductions are not allowable under the FLSA and its regulations.

62.    Defendants' deductions are not permitted by state or federal law, nor were they deducted for a lawful purpose accruing to the benefit of the employee; therefore, they constitute unlawful deductions under the IWPCL.

63.    Plaintiff Montoya and other drivers have been harmed by Defendants seeking repayment from them and/or pursuing collection of the purported debt.

64.    Defendants' violations of the FLSA, as described herein, are willful and in reckless disregard for their employees' rights under the FLSA.

65.    Defendants' violations of the IWPCL are intentional.

**B.    Additional facts relating to consumer fraud and usury.**

66.    In their "pre-employment" contracts with its drivers, Defendants state that they "will pay on behalf of Student, subject to Student's repayment obligations . . . : (a) the tuition charged by Educational Facility for Student to attend Phase 1," *inter alia*.

67.    On information and belief, the tuition that Defendants actually pay the Educational Facilities ranges from $1,400 to $2,500 per student.

68.    Defendants charge drivers $3,950 or $6,500 for this tuition and do not disclose that this amount is several thousand dollars higher than the amount Defendants have paid to the Educational Facilities.

69.    Defendants also do not disclose that one of the Educational Facilities to which they send many drivers, NADTA, is affiliated with Defendants.

70.     Defendants state in their driver contracts that NADTA is "a separate, non CRST affiliated education facility."

71.     In fact, NADTA, CRST Expedited, Inc., and CRST International, Inc. are "brother/sister companies" that are all owned by the same holding company, and CRST International, Inc. provides collection services for both NADTA and CRST Expedited, Inc.

72.     On behalf of NADTA, CRST International, Inc. pursues collection of "debts" for "tuition" charged to drivers who attend NADTA.

73.     The drivers' contracts also require repayment of several other purported "advances" by Defendants, including payment for "physical and drug screen expenses, Lodging Cost and Transportation Cost incurred during Phase 1," etc.

74.     The contracts also impose an interest rate upon these "advances" at a rate of 1.5% per month, or 18% per year, which amount begins to accrue not when the payments are due but several weeks or months earlier, "commencing as of the first day of employment under the Driver Employment Contract."

75.     The contracts claim that the interest charged will be the lesser of 18% per year or "the maximum rate permitted by applicable federal and state usury laws."

76.     However, Defendants in fact consistently charge the full 18% per year, even though the maximum rate permitted under Iowa law is approximately 5%.

77.     Additionally, because Defendants have increased the amount owed by the drivers far above the amount actually advanced by Defendants, the interest rate charged is effectively significantly higher than 18%.

EXHIBIT 1

78.     For amounts "owed" after the drivers' employment with Defendants ends, Defendants pursue repayment through CRST International, Inc.'s collections department.

79.     Defendants send collections notices to the former employees, informing them that they are initiating collection of amounts relating to the employees' school tuition and related expenses.

80.     Defendants require payment to be sent to CRST International, Inc.'s "Driver Collections" department and charge 18% interest on any monthly payments made on this amount owed.  *See* Final Notice Before Account is Sent to Collections, attached as Exhibit D.

81.     Defendants also threaten the employees that, if they do not make payments, Defendants "may turn this account over to our collection agency" which "may affect your current and future credit rating."  Id.

82.     For individuals who have not paid these amounts that Defendants claim they owe, Defendants refuse to release to the individuals their diploma and school records from the training facility.  Id.

83.     Defendants then send monthly invoices to individuals seeking repayment of the amounts "owed," suggesting a monthly payment amount, and showing the additional interest that they continue to charge on the balance.

84.     On information and belief, the amounts that Defendants charge employees for their "advances" for travel, lodging, and other expenses exceed the amounts Defendants actually paid.

EXHIBIT 1

85.     Despite representing the amounts to be reimbursed as "advances" that Defendants have paid to third parties on the employees' behalf, Defendants charge employees substantially more than they have paid for the tuition of the educational facilities, travel, lodging, and other expenses, and Defendants add a usurious interest rate.

86.     Defendants' collection efforts are designed to coerce drivers to return to the jobs, which Defendants recognize are arduous jobs that most people would not stay in willingly.

87.     CRST International, Inc.'s collection department and Defendants' rehire team essentially tag-team—seeking to use the threat of the collections process to induce drivers to return to work for the remainder of their eight-to-ten-month contracts.

88.     While Defendants makes much of their sponsorship of drivers' CDL training, they refuse to release the drivers' verification/diploma and require the schools not to release this information unless and until the drivers have either worked for Defendants for eight to ten months or paid off their debt of several thousand dollars.

89.     This threat—that the drivers will not be able to use their CDL training at any other job if they do not pay Defendants for that right—is another way in which Defendants pressure drivers to continue to work these arduous jobs.

90.     Defendants have engaged in other practices that violate the Iowa Private Right of Action for Consumer Frauds Act, Iowa Code § 714H.

91.     Defendants advertise that the CDL training provided to the drivers is "free," "sponsored," or "covered," or words to that effect.

EXHIBIT 1

92.     This advertising fails to inform potential drivers that, in fact, the training is not "free" or fully "sponsored" or "covered."

93.     The advertising does not inform potential drivers that, if they do not complete the eight to ten months working for Defendants that the driver employment agreement requires, they will:  (a) owe Defendants $3,950 to $6,500 or more, and that amount will be sent to CRST International, Inc.'s collections department and then to a third-party debt collection company; and (b) Defendants will not release the driver's CDL school certificate unless and until the driver has either worked for Defendants for eight to ten months or paid off the thousands of dollars of "debt" accrued.

94.     In advertising the Driver Training Program and in the standard-form contracts which require drivers to sign on for the possibility of thousands of dollars of debt, Defendants do not disclose to potential drivers the high percentage of drivers who do not make it out of the program (thereby incurring the debt).

95.     Defendants aggressively enforce the non-competition provision in the driver contracts, both by pressuring drivers to return to work for Defendants (as discussed above) and by intimidating other trucking companies out of hiring Defendants' drivers.

96.     If another trucking company contacts Defendants to verify proof of employment, Defendants inform the other company that the driver is still under contract with Defendants.

97.     Defendants have also initiated numerous lawsuits against other trucking companies that they claim are poaching their drivers.

16

EXHIBIT 1

98.     Defendants' actions, as set forth above, constitute a willful and wanton disregard for the rights or safety of these employees.

99.     In charging the amounts described abov to the employees, Defendants have exacted a greater profit than that allowed by law.

100.    Defendants have intentionally charged a rate of interest that is substantially higher than that allowed by Iowa law.

**V.      FLSA COLLECTIVE ACTION ALLEGATIONS**

101.    Plaintiff Montoya asserts his claims under the FLSA, pursuant to 29 U.S.C. § 216(b), on behalf of himself and on behalf of all other similarly situated employees currently and formerly employed by Defendants.

102.    Pending any modifications necessitated by discovery, the named Plaintiff preliminarily defines the collective for which he seeks certification under section 216(b) as follows:

ALL INDIVIDUALS WHO HAVE PARTICIPATED AS CONTRACT DRIVERS IN ANY PHASE OF CRST'S DRIVER TRAINING PROGRAM DURING THE APPLICABLE STATUTORY PERIOD.

103.    These claims meet the requirements for collective action certification under the FLSA.

104.    All potential opt-in plaintiffs are similarly situated with respect to the FLSA claims because they were all employees of Defendants and all suffered from the same unlawful policies, including:

a.   They were not paid for all training time;

17

EXHIBIT 1

b.   They were paid by the mile without regard to the number of hours

worked (and were not paid at all for some work) and thereby were not

paid at least minimum wage for all hours worked;

c.   They each had deductions taken from their paychecks and/or owed

monies back to Defendants for the training that they were required to

undergo at the beginning of their employment; and

d.   They were not paid their wages free and clear.

## VI.   IWPCL RULE 23 CLASS ACTION ALLEGATIONS

105.   Plaintiff asserts the IWPCL claims on behalf of a class pursuant to Fed. R.

Civ. P. 23.

106.   Pending any modifications necessitated by discovery, the named Plaintiff

preliminarily defines the following class:

> ALL INDIVIDUALS WHO HAVE PARTICIPATED AS CONTRACT
> DRIVERS IN ANY PHASE OF CRST'S DRIVER TRAINING PROGRAM
> DURING THE APPLICABLE STATUTORY PERIOD.

107.   All potential Rule 23 plaintiffs are similarly situated with respect to the

IWPCL claims because they were all employees of Defendants and all suffered from the

same unlawful policies, including:

a.   They were not paid for all training time at at least the applicable

minimum wage;

b.   They were paid by the mile without regard to the number of hours

worked (and were not paid at all for some work);

18

EXHIBIT 1

     c.   They each had unlawful deductions taken from their paychecks and/or owed monies back to Defendants for the training that they were required to undergo at the beginning of their employment and

     d.   They were not paid their wages free and clear.

108.    The members of the class are so numerous that joinder of all of them is impracticable.  On information and belief, the number of class members exceeds 20,000.

109.    There are issues of law and fact common to all class members, because Defendants' wage payment practices apply to all class members.  The common questions of law and fact predominate over any questions affecting individual class members.

110.    The claims of the named Plaintiff are typical of the claims of all members of the class, because all members of the class were subject to the same unlawful practices.

111.    The named Plaintiff and his counsel will fairly and adequately represent the interests of the class.

112.    The claims asserted on behalf of the class predominate over any question of law or fact affecting only individual members of the class.  The predominant questions of law or fact are clear, precise, well-defined, and applicable to the named Plaintiff as well as every absent member of the proposed class.

113.    A class action is superior in this case for several reasons including, but not limited to, that:  the case challenges uniform wage payment and deduction practices; many employees may be reluctant to bring claims individually for fear of retaliation;

19

some class members may not have the motivation or resources to bring their claims individually; and it would be an inefficient use of scarce judicial resources to require each employee affected by the practices challenged herein to bring his or her own individual claim.

## VII.   RULE 23 CLASS ACTION ALLEGATIONS – IOWA PRIVATE RIGHT OF ACTION FOR CONSUMER FRAUDS ACT AND USURY LAWS

114.    Plaintiff asserts the claims under the Iowa Private Right of Action for Consumer Frauds Act and the Iowa usury laws on behalf of a class pursuant to Fed. R. Civ. P. 23.

115.    Pending any modifications necessitated by discovery, the named Plaintiff preliminarily defines the following class:

> ALL INDIVIDUALS WHO HAVE PARTICIPATED AS CONTRACT DRIVERS IN ANY PHASE OF CRST'S DRIVER TRAINING PROGRAM DURING THE APPLICABLE STATUTORY PERIOD.

116.    All potential Rule 23 plaintiffs are similarly situated with respect to the consumer fraud and usury claims because they all suffered from the same unlawful policies, including:

a.   Defendants' misleading advertising about "free," "sponsored," or "covered" CDL training, which fails to inform drivers about the debt it will owe to Defendants;

b.   Defendants charging drivers significantly more for driver training schools than Defendants have paid for the driver training schools and failure to disclose this fact to the drivers;

c.  Defendants' non-disclosure of the high drop-out rate to drivers before they sign on to incur thousands of dollars in debt if they do not complete the full term of their contract;

d.  Defendants' collections process, including charging a usurious interest rate of 18% per annum (and effectively much higher) and using the collections process to induce drivers into returning to work for Defendants at jobs that Defendants know are arduous and that most people would not enter into willingly;

e.  Defendants' refusal to release drivers' diploma for CDL training (and requiring that the schools also not release the diploma) unless and until the drivers have either worked for CRST for eight to ten months or paid off their debt of several thousand dollars; and

f.  Defendants' aggressive and multi-pronged enforcement of their non-competition provision.

117.  The members of the class are so numerous that joinder of all of them is impracticable.  On information and belief, the number of class members exceeds 20,000.

118.  There are issues of law and fact common to all class members, because Defendants' wage payment practices apply to all class members.  The common questions of law and fact predominate over any questions affecting individual class members.

119.     The claims of the named Plaintiff are typical of the claims of all members of the class, because all members of the class were subject to the same unlawful practices.

120.     The named Plaintiff and his counsel will fairly and adequately represent the interests of the class.

121.     The claims asserted on behalf of the class predominate over any question of law or fact affecting only individual members of the class.  The predominant questions of law or fact are clear, precise, well-defined, and applicable to the named Plaintiff as well as every absent member of the proposed class.

122.     A class action is superior in this case for several reasons including, but not limited to, that:  the case challenges uniform deceptive and usurious practices; many employees may be reluctant to bring claims individually for fear of retaliation; some class members may not have the motivation or resources to bring their claims individually; and it would be an inefficient use of scarce judicial resources to require each employee affected by the practices challenged herein to bring his or her own individual claim.

123.     Plaintiff and his counsel have sought and obtained approval from the Iowa Attorney General's office to bring this claim pursuant to Iowa Code § 714H.7.

## COUNT I – FAIR LABOR STANDARDS ACT (FLSA)

Defendants' conduct, in failing to pay its drivers at least minimum wage for all hours worked, in taking unlawful deductions from drivers' pay, and in failing to pay wages free and clear, violates the FLSA, 29 U.S.C. § 201, et seq.  This claim is brought on

behalf of the named Plaintiff and all other similarly situated individuals pursuant to 29 U.S.C. § 216(b).

## COUNT II – IOWA WAGE PAYMENT COLLECTION LAW (IWPCL)

Defendants' conduct, in intentionally failing to pay their drivers at least the applicable statutory minimum wage for all hours worked, in intentionally taking unlawful deductions from drivers' pay, and in failing to pay wages free and clear, violates the IWPCL, Iowa Code § 91A. 1, *et seq.* and the Iowa minimum wage law, Iowa Code § 91D.1.  This claim is brought on behalf of the named Plaintiff and all other similarly situated individuals pursuant to the IWPCL, Iowa Code § 91A. 1, *et seq.*, the Iowa minimum wage law, Iowa Code § 91D.1, and Iowa Admin. Code § 875-35.2(91A).

## COUNT III – IOWA PRIVATE RIGHT OF ACTION FOR CONSUMER FRAUDS ACT

Defendants' conduct, as set forth above, violates the Iowa Private Right of Action for Consumer Frauds Act, Iowa Code § 714H.1, *et seq.*  Through the actions described above, Defendants have violated the provisions of Iowa Code § 714H.3.  This claim is brought on behalf of the named Plaintiff and all other similarly situated individuals pursuant to Iowa Code § 714H.5.

## COUNT IV – IOWA USURY LAWS

Defendants' conduct, as set forth above, violates the Iowa usury laws, because Defendants have charged a higher rate of interest than that allowed by Iowa Code § 535.2.  This claim is brought on behalf of the named Plaintiff and all other similarly situated individuals pursuant to Iowa Code § 535.5.

**DEMAND FOR JURY TRIAL**

The Plaintiff demands a jury for all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter the following

relief:

a.    Certification of an opt-in class pursuant to the FLSA, 29 U.S.C. § 201, et seq.;

b.    Permission for Plaintiffs to notify fellow employees of their right to opt-in to

this action to pursue a claim under the FLSA, pursuant to 29 U.S.C. § 216(b);

c.    Certification of the Iowa state law wage claims as a class action under Fed. R.

Civ. P. 23;

d.    Certification of the Iowa consumer fraud and usury claims as a class action

under Fed. R. Civ. P. 23;

e.    An award of damages for all minimum wages, wrongfully withheld

deductions, and other unpaid wages that are due to the named Plaintiff and

all similarly situated employees under the FLSA;

f.    Statutory liquidated damages under the FLSA;

g.    A finding that Defendants' violation of the FLSA was willful and that,

therefore, the statute of limitations for the FLSA claim is three years;

h.    An award of damages for all minimum wages, unlawfully withheld

deductions, and other unpaid wages that are due to the named Plaintiff and

all similarly situated employees under the IWPCL;

24

# EXHIBIT 1

i.       A finding that Defendants' violation of the IWPCL was intentional and that, therefore, the named Plaintiff and all similarly situated employees are entitled to statutory liquidated damages under the IWPCL;

j.       Statutory liquidated damages under the IWPCL;

k.       An award of damages under the Iowa Private Right of Action for Consumer Fraud Act for all amounts unlawfully charged/attributed to and/or paid by employees and any other damages accrued as a result of Defendants' unlawful acts;

l.       A finding that the Defendants' violation of the Iowa Private Right of Action for Consumer Fraud Act has been willful and that, therefore, the named Plaintiff and all similarly situated employees are entitled to treble damages;

m.       An injunction preventing Defendants from pursuing collection of unlawfully charged amounts and/or deducting such amounts from employees' wages and requiring Defendants to take action to cease all third-party collections of these amounts and to take whatever actions are necessary to repair any damage done to employees' credit;

n.       An award of damages under the Iowa usury laws;

o.       An injunction under the Iowa usury laws preventing Defendants from charging usurious interest rates;

p.       Attorneys' fees and costs;

q.       Pre- and post-judgment interest; and

r.     Any other relief to which the named Plaintiff and similarly situated

employees may be entitled.

Respectfully submitted,

JUAN CARLOS MONTOYA, on behalf of
himself and all others similarly situated,

By their attorneys,

/s/ Hillary Schwab
Hillary Schwab, BBO #666029
Rachel Smit, BBO #688294
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
(617) 607-3260
www.fairworklaw.com
Email: hillary@fairworklaw.com,
rachel@fairworklaw.com

Andrew S. Schmidt, Esq., admitted *pro hac vice*
Peter Mancuso, Esq., admitted *pro hac vice*
Andrew Schmidt Law, PLLC
97 India Street
Portland, ME 04101
207-650-0320
andy@maineworkerjustice.com;
peter@maineworkerjustice.com

Dated: August 29, 2017