```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS

_____
                              )
JUAN CARLOS MONTOYA,          )
on behalf of himself and      )
all others similarly situated )
                              )
            Plaintiff,        )
                              )    Civil Action
       v.                     )    No. 16-10095-PBS
                              )
CRST EXPEDITED, INC., and CRST)
INTERNATIONAL, INC.           )
                              )
            Defendants.       )
_____)
```

**MEMORANDUM AND ORDER**

January 30, 2018

Saris, C.J.

**INTRODUCTION**

This case involves a putative class of truck drivers who seek redress for alleged unpaid wages and unlawful deductions from their pay. The named Plaintiff is Juan Montoya, a former employee of the Defendants, CRST Expedited, Inc., and CRST International, Inc.[1] His complaint asserts causes of action under

---

[1] The Plaintiff alleges that the two named Defendants are "brother/sister" companies owned by the same holding company. Although technically the motion at issue here was filed by only one Defendant (CRST Expedited), the distinction between the two entities is not material for purposes of this memorandum, and they will be referred to collectively.

1

the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and various provisions of Iowa law.

In March 2016, the Defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) or to transfer to the Northern District of Iowa under 28 U.S.C. § 1404(a). They relied primarily upon a forum-selection clause in one of Montoya's employment contracts that fixes venue in Cedar Rapids, Iowa. At a hearing in February 2017, the Court denied the motion without prejudice, mainly due to concerns about whether Montoya, whose native language is Spanish, was able to comprehend the forum-selection clause, which, like the rest of the contract, was written in English. The Court also expressed uncertainty over what weight to afford a forum-selection clause in an FLSA action. After discovery, the Defendants renewed their motion to dismiss or transfer in September 2017, which the Plaintiff opposed. The renewed motion is now ripe for decision.

After considering the initial record and the parties' supplemental materials, the Court declines to enforce the forum-selection clause against Montoya because to do so would be unreasonable and unjust. The Court further concludes that CRST has not met its substantial burden to override the plaintiff's choice of forum, as required under § 1404(a) when the parties are not bound by an enforceable forum-selection clause.

Therefore, the Court again **DENIES** the Defendants' motion to dismiss or transfer (Docket No. 7).

## FACTUAL BACKGROUND

The following facts are drawn from the Plaintiff's First Amended Complaint (Docket No. 90) ("FAC") and attached documents.

Montoya, a resident of Boston, Massachusetts, worked for CRST from October to December 2014. Both CRST entities are Iowa corporations that ship goods in interstate commerce. The Defendants recruited drivers, including Montoya, by promising sign-on bonuses and "free" commercial driver's license ("CDL") training. CRST requires new drivers to complete a training program that consists of four phases.

In Phase 1, participants must attend, without pay, a driver training program at an educational facility operated by a third party.[2] Phase 2 consists of orientation, also unpaid, at a site selected by CRST.[3] Phase 3 entails hands-on over-the-road training with another CRST driver. In Phase 4, drivers receive specialized classroom training and mentoring. During Phases 3 and 4, drivers are paid at a per-mile rate while they are driving, but they are not paid when the truck is not moving

---

[2] In Montoya's case, the Phase 1 educational facility was located in Marine City, Michigan.

[3] For Montoya, the Phase 2 program occurred in Cedar Rapids, Iowa.

(e.g., loading and unloading time) or when another driver is driving.

Drivers are required to attend Phase 1 training regardless of whether they already possess a valid CDL. Only after traveling to the third-party facility are drivers asked to sign a Pre-Employment Driver Training Agreement, the first of two contracts relevant to this case.

The Pre-Employment Agreement explains that CRST considers the amounts it pays upfront for trainees to attend the Phase 1 and Phase 2 programs -- for instance, their travel, lodging, and tuition expenses -- to be advances. Accordingly, the Pre-Employment Agreement provides, in part, that if a driver is dismissed or withdraws from the program prior to Phase 3, or breaches the subsequent Employment Contract or is terminated within eight months of being hired, the driver must repay the advanced sums -- an amount that "will equal or exceed the sum of $2,000" -- plus interest. Alternatively, once a trainee completes the first week of Phase 4, CRST begins to deduct up to $40 per week from the driver's weekly pay until the advanced sums are repaid in full.

After completing Phase 2, drivers are required to sign the second relevant contract, the CRST Driver Employment Contract. This document reiterates the repayment provisions just discussed. It also includes a choice-of-law and forum-selection

clause stating that Iowa law shall govern interpretation of the contract and that "any claim, litigation, or dispute arising from or related to this Contract shall be litigated in the appropriate federal or state court located in Cedar Rapids, Iowa."

The FAC alleges that, as a result of the practices described above, CRST drivers are often paid less than the federal minimum wage. It also alleges, among other things, that CRST makes deductions from drivers' paychecks for improper purposes, that certain deductions constitute unlawful kickbacks to the Defendants, and that CRST charges an excessive interest rate.

## DISCUSSION

## I. **Enforceability of the Forum-Selection Clause**

A. Which Way to the Forum

In seeking to enforce the forum-selection clause through dismissal or transfer, CRST argues that Montoya's English language proficiency is irrelevant to whether the clause is enforceable. In the alternative, it argues that Montoya's job application, deposition testimony, and other evidence unearthed in discovery reveal that Montoya's English is not so poor as to preclude enforcement of the forum-selection clause. It also

argues that forum-selection clauses are routinely enforced in FLSA cases.[4]

Montoya argues that discovery has bolstered his assertion that he is unable to read written English and therefore could not have understood the forum-selection clause in the Employment Contract. He also argues that the circumstances under which he signed the Employment Contract would make it unreasonable and unjust for the Court to enforce the forum-selection clause against him. Alternatively, Montoya argues that reasons of public policy permit the Court to override the forum-selection clause even if it is enforceable.

B. Legal Standard Under *Atlantic Marine*

The threshold question is the standard for evaluating a dispute over the enforceability of a forum-selection clause. The Supreme Court addressed the issue in Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas, 134 S.Ct. 568 (2013). According to Atlantic Marine, "the appropriate way to enforce a forum-selection clause" is "through a motion to transfer under § 1404(a)"[5] or, if the clause points to a state or foreign forum,

---

[4] Given the Court's conclusion below regarding the enforceability of the forum-selection clause in this case, there is no need to address this argument concerning forum-selection clauses in FLSA cases more generally.

[5] The statute provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been

6

"through the doctrine of forum non conveniens." 134 S.Ct. at 579-80. However, the Supreme Court "explicitly declined to express a view as to whether a Rule 12(b)(6) motion is a proper alternative." Claudio-De Leon v. Sistema Universitario Ana G. Mendez, 775 F.3d 41, 46 n.3 (1st Cir. 2014) (citing Atl. Marine, 134 S.Ct. at 580). Accordingly, the First Circuit has advised that "the use of Rule 12(b)(6) to evaluate forum selection clauses is still permissible in this Circuit," and courts should "not decline to review or enforce a valid forum selection clause simply because a defendant brought a motion under 12(b)(6) as opposed to under § 1404 or forum non conveniens." Id.

Here, CRST's motion to dismiss or transfer travels in two lanes -- under both Rule 12(b)(6) and § 1404(a). Given the Supreme Court's apparent preference for enforcing forum-selection clauses under the rubric of § 1404, the Court will primarily apply that framework. Under the typical § 1404(a) analysis, a forum selection clause is "prima facie valid" and should be enforced absent a "strong showing" by the resisting party that the clause is "unreasonable" under the circumstances. Claudio-De Leon, 775 F.3d at 48 (quoting M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10, 15 (1972)).[6] Relying on Bremen,

---

brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

[6] The only forum-selection clause issue the parties raise here is its enforceability -- and not its scope, or whether it is permissive or

7

the First Circuit has recognized four grounds for finding a forum-selection clause unreasonable, and therefore unenforceable:

> (1) the clause was the product of fraud or overreaching;
>
> (2) enforcement would be unreasonable and unjust;
>
> (3) proceedings in the contractual forum will be so gravely difficult and inconvenient that the party challenging the clause will for all practical purposes be deprived of his day in court; and
>
> (4) enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision.

Id. at 48-49.

But a procedural roundabout remains. In this case, the parties disagree about what standard the Court should use to determine the facts underlying the reasonableness question. Montoya argues that a summary judgment standard should apply because CRST has renewed its motion to dismiss after conducting discovery, which, according to Montoya, requires the Court to convert the motion from one under Rule 12(b)(6) into one under Rule 56. See Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009) (describing how, when materials outside the pleadings are considered, motion to dismiss based on forum-selection clause must be decided "under the more stringent

---

mandatory. See Claudio-De Leon v. Sistema Universitario Ana G. Mendez, 775 F.3d 41, 46-48 (1st Cir. 2014) (discussing three steps in forum-selection clause analysis).

standards applicable to a Rule 56 motion for summary judgment"); Fed. R. Civ. P. 12(d) (discussing procedure to convert motion under Rule 12(b)(6) to one for summary judgment under Rule 56). Concerned about the potential for a jury trial on the issue of forum, CRST urges the Court to conduct its own fact-finding, similar to the way it would when faced with a motion to dismiss for lack of personal jurisdiction. See, e.g., Hilsinger Co. v. FBW Investments, 109 F. Supp. 3d 409, 417 (D. Mass. 2015) (discussing various standards for fact-finding relevant to personal jurisdiction disputes).

The parties do not provide any cases squarely addressing this question, and Atlantic Marine did not discuss it. See 134 S.Ct. at 581 n.5 (noting that Supreme Court's analysis "presupposes a contractually valid forum-selection clause"). Ultimately, the Court need not resolve the question here because, as discussed in more detail below, the Court's conclusion is based upon facts that are, for purposes of this motion, undisputed. Accordingly, the same result would obtain under either a Rule 56 standard or under any of the personal jurisdiction standards.

C. Analysis of "Unreasonable and Unjust"

The question before the Court is whether it would be "unreasonable and unjust" to enforce the forum-selection clause against Montoya. The parties burn a lot of rubber discussing

Montoya's comprehension of written English. As CRST points out, in Soto v. State Indus. Prod., Inc., 642 F.3d 67 (1st Cir. 2011), the First Circuit followed the "general and well established principle of contract law that 'one who is ignorant of the language in which a document is written, or who is illiterate,' may be bound to a contract by negligently failing to learn its contents." Soto, 642 F.3d 67 at 78 (quoting 1 Richard A. Lord, Williston on Contracts § 4:19 (4th ed. 2010)) (applying Puerto Rico law). However, Montoya's language skills are very much in dispute and cannot be resolved on this record. Accordingly, the Court does not rely on this ground in reaching its conclusion.[7]

With the disputed question of Montoya's English skills set aside, CRST has not contested the following facts: In October 2014, enticed by a postcard promising "free" training, Montoya traveled by Greyhound bus to Marine City, Michigan, where he was presented with, and signed, the Pre-Employment Agreement. This contract did not contain a forum-selection clause, but it bound Montoya to owe CRST a minimum of $2,000, and possibly more, depending on how the employment relationship developed, to

---

[7] Moreover, Soto is distinguishable. It is hard to argue that Montoya was negligent as a matter of law when he was first presented with the second contract, containing the forum-selection clause, at a CRST facility far from his home, by a CRST instructor who explained portions of the contract but "never mentioned anything about needing to bring any disputes about the contract in an Iowa court."

reimburse the company for various training-related expenses. Two weeks later, after traveling to Cedar Rapids, Iowa, and completing CRST's orientation program, Montoya was presented with, and signed, the Employment Contract. This contract contained the forum-selection clause at issue here. Thus, at the point in time where Montoya was first presented with the forum-selection clause, he would have owed CRST at least $2,000, and possibly more, if he walked away from the contract.

Given that CRST has not disputed these circumstances, even if Montoya spoke Shakespeare's English, the Court has little trouble concluding that Montoya has met his burden to "clearly show that enforcement [of the forum-selection clause] would be unreasonable and unjust." Bremen, 407 U.S. at 15. After all, if he declined to sign, he would have been stranded in Iowa without bus fare home and with a debt of $2,000. See Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 595 (1991) (emphasizing that forum-selection clauses on passenger tickets remain "subject to judicial scrutiny for fundamental fairness" and noting that passengers in that case "retained the option of rejecting the contract with impunity"); Metcalf v. Bay Ferries Ltd., 937 F. Supp. 2d 147, 160 (D. Mass. 2013) (declining to enforce forum-selection clause where ferry passengers were "not afforded a reasonable opportunity to become meaningfully acquainted with the full terms and conditions of passage" printed on tickets,

given to them ten minutes before departure); Dove Air, Inc. v. Bennett, 226 F. Supp. 2d 771, 775 (W.D.N.C. 2002) (declining to enforce forum-selection clause where plaintiff "was in desperate financial condition" at time he signed agreement and "there was no bargaining at all" over terms of contract); Schaff v. Sun Line Cruises, Inc., 999 F. Supp. 924, 927 (S.D. Tex. 1998) (declining to enforce forum-selection clause on passenger's cruise ticket where plaintiff "would have forfeited the entire ticket price" of approximately $1,770 if she canceled trip at time she received ticket and thereby learned of clause; because she "did not have an option to reject the cruise contract . . . applying the forum selection provisions to her would be fundamentally unfair"). But cf. Rivera, 575 F.3d at 22 (enforcing forum-selection clause despite indicia of overreaching, in part, because hospital patient retained "the option of going to another hospital"); Kurra v. Synergy Computer Sols., Inc., 15-CV-13952, 2016 WL 5109132, at *11 (D. Mass. Sept. 19, 2016) (finding forum-selection clause enforceable despite plaintiff's claim of duress where record showed plaintiff signed agreement containing forum-selection clause before he came to United States from home country of India).

Accordingly, the Court declines to enforce the forum-selection clause because to do so "would be unreasonable and unjust." Bremen, 407 U.S. at 15. Because this conclusion is

based upon undisputed facts, the result is the same whether the Court conducts its own fact-finding or applies Rule 56.

## II. Transfer Under the Traditional Factors of § 1404(a)

### A. Parties' Arguments

CRST argues that, even in the absence of an enforceable forum-selection clause, the § 1404(a) factors weigh in favor of transfer to the Northern District of Iowa, primarily because that is the location of the vast majority of the company's employees who are likely to be called as witnesses. Montoya counters that transfer is inappropriate under the § 1404(a) factors because, among other reasons, the plaintiffs' choice of forum in an "opt-in" class action under the FLSA is entitled to substantial deference.

### B. Legal Standard

Where, as here, a valid forum-selection clause is not in play, § 1404(a) requires the Court to weigh an array of private- and public-interest factors to determine "whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" Atl. Marine, 134 S. Ct. at 581 (quoting 28 U.S.C. § 1404(a)). "Factors relating to the parties' private interests include 'relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of

13

premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.'" Id. n.6 (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 n.6 (1981)). "Public-interest factors may include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." Id. "The Court must also give some weight to the plaintiffs' choice of forum." Id. (citing Norwood v. Kirkpatrick, 349 U.S. 29, 32 (1955)).

   C. Analysis

      *1. Plaintiff's Choice of Forum*

CRST argues that Montoya's choice of forum in the District of Massachusetts is entitled to little weight because Montoya seeks to represent a nationwide class, and so far, the other opt-in plaintiffs reside in Mississippi, Michigan, and Florida, thereby diluting whatever weight the Court might afford to Montoya's choice of forum. Montoya counters that the selection of forum by FLSA plaintiffs deserves more, not less, deference because, unlike a typical Rule 23 class, members of an FLSA class must "opt-in" rather than "opt-out" of the collective action.

The Court finds the "opt-in" mechanism of FLSA classes to be a persuasive distinction in this case. In essence, it means that FLSA class members who "opt-in" to this litigation are, at least implicitly, signaling that they prefer to join this case in Massachusetts rather than file a claim closer to home. See Johnson v. VCG Holding Corp., 767 F. Supp. 2d 208, 215-16 (D. Me. 2011) (discussing cases that, based on FLSA "opt-in" procedure, concluded "Congress intended to give plaintiffs considerable control over the bringing of an FLSA action"). Thus, unlike typical Rule 23 class members, the "opt-in" plaintiffs in this case have, in a sense, joined in Montoya's selection of forum in Massachusetts. Accordingly, the Court agrees that a plaintiff's choice of forum in an FLSA case is entitled to deference. Johnson, 767 F. Supp. 2d at 216. This factor weighs in Montoya's favor.

*2. Convenience of the Parties and Witnesses*

CRST argues that a transfer to the Northern District of Iowa will best serve the convenience of the parties and witnesses because that is where the vast majority of the relevant witnesses are located. Because CRST is headquartered in Cedar Rapids, all of its personnel-related functions, including its payroll, dispatch, and finance departments, are located there. This includes the employees responsible for determining

the amounts charged to trainees for the Driver Training Programs.

Montoya argues that the convenience factor weighs in his favor because most of the witnesses will be the parties themselves and, as discussed above, the "opt-in" plaintiffs have all chosen to litigate this case in Massachusetts. He also argues that CRST, as a large corporation, is better positioned to absorb any inconvenience than Montoya, an hourly worker. Montoya further argues that, in terms of air travel, Boston is a far more accessible destination than Cedar Rapids. Finally, he argues that because other CRST employment contracts have forum-selection clauses fixing venue in California, Florida, and Oklahoma, the Court can infer that the convenience of litigating in Cedar Rapids is not an overwhelming concern for CRST.

The parties appear to agree that most of the witnesses would be either the parties or, in CRST's case, agents. However, the convenience factor remains difficult to evaluate because the witness list is not clear. Cf. Princess House, Inc. v. Lindsey, 136 F.R.D. 16, 18 (D. Mass. 1991) ("A party seeking transfer on this basis [convenience] must, therefore, specify the key witnesses to be called, accompanied by a general statement as to what their testimony will entail.").[8] Further, cases support the

---

[8] CRST asserts that Montoya has deposed eight CRST witnesses, seven of whom live and work in Iowa. It is not clear whether all of these

16

principle that "the balance of convenience focuses on the comparative financial abilities of the parties and the cost of litigation should be borne by the party in the best position to absorb and spread it." Sigros v. Walt Disney World Co., 129 F. Supp. 2d 56, 71 (D. Mass. 2001).

Here, there can be little doubt that a large corporation like CRST is in a better position to absorb the cost of an inconvenient forum than an hourly employee like Montoya. As a result, even if the number of Iowa-based witnesses slightly favors transfer, this consideration is neutralized by the fact that CRST is better able to absorb the cost of such inconvenience.

*3. Location of Documents*

CRST argues, without providing any detail, that transfer is appropriate because the vast majority of the relevant documents are located in Iowa. However, the Court agrees with Montoya's rejoinder: "This factor seems like a holdover from a time when businesses kept important records, including payroll records, in paper and the difficulty of physically accessing the paper documents and the burden of transporting them across jurisdictions could be onerous." Johnson, 767 F. Supp. 2d at 216. In 2018, digital documents are just a click away.

---

witnesses would be called at trial or what the substance of their testimony would be.

Accordingly, this factor does not weigh in favor of either party.

   *4. Application of Iowa Law*

The final factor the parties raise is that several counts in the FAC call upon the Court to apply Iowa law. Although district courts are "undoubtedly capable" of applying the laws of states outside of their districts, "[a] district's familiarity with the governing law is an appropriate factor to consider" in the § 1404(a) analysis. Johnson, 767 F. Supp. 2d at 217. At best, this factor tips slightly in favor of transfer because it is plausible that a district court in Iowa may be somewhat "more familiar" with Iowa law and "in a better position to apply it" than a district court in Massachusetts. Id.

   D. Conclusion

On balance, the § 1404(a) factors weigh against transfer. Given the considerable deference owed to the plaintiffs' choice of forum in an FLSA collective action, CRST -- in the absence of an enforceable forum-selection clause -- has not done enough to overcome the "strong presumption in favor of the plaintiff's choice of forum." Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 13 (1st Cir. 2009). Accordingly, the Court denies CRST's motion to transfer under § 1404(a).

### ORDER

CRST's renewed motion to dismiss or transfer (Docket No. 7) is **DENIED**.

/s/ PATTI B. SARIS
Patti B. Saris
Chief United States District Judge