**EXHIBIT A**

1                IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MASSACHUSETTS
2

3    JUAN CARLOS MONTOYA on behalf of   )
     himself and all others similarly   )
4    situated,                          )
                                        )
5               Plaintiffs             )   CA No. 16-10095-PBS
                                        )   Pages 1 - 20
6          -VS-                         )
                                        )
7    CRST EXPEDITED, INC.,             )
                                        )
8               Defendant              )

9

10                   **STATUS CONFERENCE**

11          BEFORE THE HONORABLE PATTI B. SARIS
              UNITED STATES CHIEF DISTRICT JUDGE
12

13

14

15

16                            United States District Court
                              1 Courthouse Way, Courtroom 19
17                            Boston, Massachusetts  02210
                              September 26, 2017, 10:29 a.m.
18

19

20

21

22                       LEE A. MARZILLI
23                    OFFICIAL COURT REPORTER
                  United States District Court
24                1 Courthouse Way, Room 7200
                         Boston, MA  02210
25                       (617)345-6787

**EXHIBIT A**

1   A P P E A R A N C E S:

2       HILLARY A. SCHWAB, ESQ. and RACHEL J. SMIT, ESQ.,
    Fair Work, P.C., Suite 450, 192 South Street, Boston,
3   Massachusetts, 02111, for the Plaintiff.

4       GREGORY P. HANSEL, ESQ., Preti Flaherty Beliveau &
    Pachios, LLP, One City Center, P.O. Box 9546, Portland, Maine,
5   04112-9546, for the Defendant.

6       DANIEL R. SONNEBORN, ESQ., Preti Flaherty,
    60 State Street, Suite 1100, Boston, Massachusetts, 02109,
7   for the Defendant.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**EXHIBIT A**

```
 1                    P R O C E E D I N G S

 2          THE CLERK:  Court calls Civil Action 16-10095, Montoya

 3     v. CRST Expedited, Inc.  Could counsel please identify

 4     themselves.

 5          MS. SCHWAB:  Good morning, your Honor.  Hillary Schwab

 6     appearing for the plaintiffs, and with me is Rachel Smit.

 7          MR. HANSEL:  Good morning, your Honor.  Greg Hansel

 8     appearing for the defendant, CRST.

 9          MR. SONNEBORN:  And Dan Sonneborn for the defendant as

10     well.  Thank you.

11          THE COURT:  All right.  So I'm awash in motions.  Let

12     me just start on one basic question, which is, does it turn out

13     that Mr. Montoya can speak English?

14          MS. SCHWAB:  No.  The testimony has been consistent

15     with what was originally put in his affidavit that both that he

16     did not understand -- doesn't speak English to the point that

17     he could understand.  It wasn't translated to him.  So, no, the

18     deposition testimony is borne out, what was in his affidavit.

19          THE COURT:  I'll just have to see it because there's

20     obviously disagreement as to what it even says.

21          MR. HANSEL:  Your Honor, he does have some capability

22     of speaking English, enough to navigate the trainings, several

23     days of training, orientation, and he applied for a job on the

24     application that states that he speaks English.  But perhaps

25     the more important point on the transfer motion is that if one
```

**EXHIBIT A**

1    signs an agreement that's in English, under First Circuit law,

2    one is bound by the agreement in any event.  One can't just

3    sign things, you know, that they don't understand and then try

4    to avoid them.

5        THE COURT:  Well, if he speaks English, I have a

6    different feel about the case than if he doesn't speak English.

7    I didn't buy that argument before and I'm not likely to now,

8    but that said, you said he took the training in English.

9        MR. HANSEL:  He did indeed, and he drove, you know,

10    drove all throughout the United States and manages fine with

11    English.

12        THE COURT:  Yes, there's English and there's English.

13    I mean, it just depends how proficient he is.  But I don't

14    think I need to decide that right now, right?

15        MR. HANSEL:  No, your Honor, but I do believe that the

16    Court is correct to focus on the transfer motion as the

17    threshold preliminary motion to be addressed first in the

18    order.  In fact, that motion was filed nine months earlier than

19    the motion for conditional class certification.

20        THE COURT:  Well, what I want to do is, I want to get

21    the conditional class cert and the class action in sync at this

22    point.  I don't have endless time.  And so when I look at it,

23    I'll look at it at one time, realistically.  And I do get it

24    that that slows us down a little bit, but -- so where are we

25    with both of those?

# EXHIBIT A

1              MR. HANSEL:  Your Honor, I would just urge the Court

2      to consider proceeding in the sort of normal orderly course of

3      a two-step process, and there's a specific reason for that.  If

4      the Court is inclined to grant the conditional class

5      certification motion, the plaintiff has requested certification

6      in that motion of two separate classes:  a class of trainees of

7      over 23,000 trainees and a class of drivers of over 10,000

8      drivers.  And we don't know -- I believe at a recent hearing

9      your Honor stated you were inclined to certify a class, or at

10     least one class, but we didn't know if it would be one or both

11     or which one, so that affects the scope of the case.

12             THE COURT:  Well, I think I'm asking a somewhat

13     different question.  They're seeking a collective class as well

14     as a typical class, right?

15             MR. HANSEL:  That's true, your Honor.

16             THE COURT:  So why don't I decide it all at once?

17             MR. HANSEL:  The reason is that --

18             THE COURT:  Let me just say, I don't have infinite

19     time.  Believe it or not, I have four of these trucking cases.

20     I don't know why.  I've become like the trucking queen or

21     something.  But, anyway, I have so many of these trucking

22     cases, and they're all a little different.  And, of course, in

23     my mind, I confuse them a little bit.  But where are we?  The

24     collective case has been totally briefed, right?

25             MR. HANSEL:  No, your Honor.  The existing scheduling

# EXHIBIT A

1   order provided that there would be supplemental briefing on the

2   motion for conditional class certification of a collective

3   action under the Fair Labor Standards Act.

4          THE COURT:  Yes.

5          MR. HANSEL:  That's Count 1 is the federal claim.  The

6   other three claims are Iowa law claims, and those are under

7   Rule 23.

8          THE COURT:  Right, so have they been completely

9   briefed yet?

10         MR. HANSEL:  No, they have not, and what was supposed

11  to happen --

12         THE COURT:  Well, could you let her say two words.

13         MR. HANSEL:  Sure, sure.

14         THE COURT:  All right.

15         MS. SCHWAB:  Thank you, your Honor.  We recently filed

16  a motion that incorporates the conditional cert arguments, the

17  discovery that we've gotten, and also moves for class

18  certification.  Defendant has to oppose that.  So that's where

19  we are.  Where we are right now is the three motions that are

20  pending before you.  The class conditional cert motion, the

21  motion to amend the complaint, and the motion to transfer have

22  been filed.  Oppositions have not been filed on any of those

23  three motions yet.  So it's our position that what should

24  happen next is oppositions on all three motions, and, at the

25  Court's convenience, a hearing.

**EXHIBIT A**

1    THE COURT:  When?  Because I'm going to -- when can

2    I -- if everything has been filed and the opps come in in

3    14 days, right?

4    MS. SCHWAB:  Yes.

5    THE COURT:  No?

6    MR. HANSEL:  Your Honor, we would respectfully ask the

7    Court to consider the following; that under the existing

8    procedure, we took discovery of three opt-in plaintiffs in the

9    collective action.  But if the Court were inclined to grant one

10   of the classes conditionally or both under the conditional

11   motion, then there would normally be a notice to the class and

12   a new opt-in deadline, and there would be additional opt-in

13   plaintiffs.  We don't believe it's fair to the defendant to try

14   to extrapolate from four plaintiffs, three opt-ins and one

15   named plaintiff, to 23,000 class members without some

16   additional discovery of opt-in plaintiffs, and we won't know

17   who they are until whether the Court grants --

18   THE COURT:  Well, typically in a motion for class cert

19   you get class discovery, but you can't -- I don't understand --

20   maybe I'm not understanding what your issue is.  Why wouldn't

21   I -- their motion for class cert, have you had discovery on the

22   motion for class cert?

23   MR. HANSEL:  We've only had limited.  The Court

24   allowed limited discovery on the motion for conditional class

25   cert, and this day was actually supposed to be the hearing on

**EXHIBIT A**

```
 1   the motion for conditional class cert, but instead the

 2   plaintiff filed a motion for unconditional class cert --

 3           THE COURT:  Sure, a Rule 23.

 4           MR. HANSEL:  A Rule 23.  So they're really sort of

 5   leapfrogging --

 6           THE COURT:  Maybe, but, you know, I don't have

 7   infinite time.  I'm not going to do drip, drip, drip, drip.  I

 8   just want to deal with it all at once, so --

 9           MS. SCHWAB:  Your Honor, may I respond briefly to

10   that?  Briefly, there were two separate hearings in the spring

11   in which the Court ordered that we take class discovery, that

12   Mr. Montoya's full deposition be taken; and at the May hearing

13   the Court said, "I'm going to impose an expedited discovery

14   schedule on both Rule 23 and FSLA issues."

15           We've done the discovery.  We all have what we need

16   for these motions to be decided.  The elephant in the room from

17   the defendant's standpoint is that it is typical that

18   defendants like to get all the opt-ins to come in, drown the

19   plaintiffs in opt-in discovery.  And here we have a Rule 23

20   class also that's ready to go, ready to be opposed and decided;

21   and there's no need for the parties to take months and years

22   fighting over the scope of opt-in discovery, taking discovery

23   of thousands of opt-ins.

24           THE COURT:  Well, at some point, if you have both

25   classes, they may get it.
```

**EXHIBIT A**

1          MS. SCHWAB:  That's true, but we're entitled to have

2     Rule 23 decided early.  We've presented everything that needs

3     to be done to decide that.  We have one named plaintiff.

4     They've taken full discovery on that one named plaintiff on

5     class issues.

6          THE COURT:  This is Montoya?

7          MS. SCHWAB:  Montoya, yes.  And they've also gotten

8     additional class members, which is unusual, frankly, at this

9     stage.

10          THE COURT:  Right.  When can you do the oppositions?

11     I just want it to all go at once, and then I'll hear you.  I

12     haven't really rolled up my sleeves yet on the substance of it.

13          MR. HANSEL:  Well, your Honor --

14          THE COURT:  Just how much time do you need?

15          MR. HANSEL:  Well, we would suggest -- first, we think

16     the Court should first reach the transfer motion, and if --

17          THE COURT:  I'm not doing that.  At some point I'm

18     going to deal with class cert.  And then the transfer motion,

19     didn't I already address that?

20          MR. HANSEL:  Well, your Honor stated that you would

21     consider, you know, revisiting that issue --

22          THE COURT:  But this will do it all at once.  I'm not

23     going to do that because no matter what, some judge is going to

24     have to -- there's going to be a class cert issue and a class

25     opt-in.  At this point I just want to move this case off the

# EXHIBIT A

1    dime.

2          MR. HANSEL:  We would suggest, respectfully, that the

3    best way for the Court to do that would be to rule on the

4    motion for conditional class certification, which is almost

5    fully briefed.  I will say that for the defendant to respond to

6    the two new class certification motions that have recently been

7    filed is a very involved thing, and I'd like to explain why, if

8    I may very briefly.

9          So the gravamen of the case is that the defendant's

10   method of paying drivers by the mile violates the minimum wage

11   laws, but we need to do extensive analysis of data, which the

12   plaintiff has not even received or analyzed himself -- but

13   that's his call -- that shows that for each of these drivers,

14   it can be very individualized.  For example, many drivers

15   received cash advances on their pay, and then the advances were

16   deducted --

17         THE COURT:  Well, then don't you win on your class

18   cert?  I mean, that's part of the class cert thing, the

19   predominance issue, so I don't understand why --

20         MR. HANSEL:  We need to analyze the payment records of

21   23,000 drivers.  You know, it's a big data project.

22         THE COURT:  You're not going to have to analyze

23   23,000.  All you have to show me is that there's differences.

24   I mean, this comes up in every class cert.  I have so many

25   class certs.  So you're going to basically argue that the

**EXHIBIT A**

1    individual issues predominate over the common ones.

2            MR. HANSEL:  That's exactly right, your Honor.

3            THE COURT:  So you don't need to do 23,000 wage

4    calculations.  You're in control of this information.  My guess

5    is, you already have 15 good examples, right?

6            MR. HANSEL:  We haven't done the analysis yet because

7    we thought we were at the conditional class certification

8    stage.

9            THE COURT:  I understand that, and that's why we had

10   this status conference to sort of bring everyone up to speed.

11   But I'm only one judge, and I'm not going to go drip, drip,

12   drip.  I want to just rule on the collective and class cert

13   issues.  And so how long will it take you to oppose?

14           MR. HANSEL:  We would request four months, your Honor.

15           THE COURT:  To oppose?

16           MR. HANSEL:  Yes.

17           THE COURT:  Why?

18           MR. HANSEL:  Well, we may need to retain experts to

19   analyze this data and show that --

20           THE COURT:  All right, let's assume for a minute I

21   give him the four months, do you still want to go on the -- I

22   just -- you raised it late.

23           MS. SCHWAB:  I object to the suggestion that they need

24   four months.  They have everything, as you said.  The analysis

25   is not that complicated.  It's payroll records.  It's hours.

# EXHIBIT A

1   It can be done in-house.  If they want to retain an expert,

2   they're allowed to do that.  Certainly there are experts who

3   can respond on an expedited basis.

4        THE COURT:  Well, you're the one who raised it late.

5   So I will give you your four months.  Not late in the sense

6   that it's tardy, but in the sense, that wasn't how we were

7   thinking we were progressing.  So I'll give you till -- so

8   what's today?  It's --

9        THE CLERK:  January 26, 2018.

10        THE COURT:  January 26 you'll file your opposition.

11        MS. SCHWAB:  Your Honor, one other point so that we

12   don't deal with this case in drips.  We also have prepared --

13   or we're also in the process of working on a Rule 23 motion on

14   the consumer claims.  There are two consumer claims under Iowa

15   law.  We had intended to move for Rule 23 class certification

16   on those but didn't want to overwhelm the Court, but given that

17   we --

18        THE COURT:  You're overwhelming me, okay?  You are

19   overwhelming me.

20        MS. SCHWAB:  It's a big case, your Honor.

21        THE COURT:  So let's just say that, it's a big case.

22   So when can you file your Rule 23?  Because it is -- I mean, to

23   some extent you're creating your own worst enemy because every

24   time I think I'm going to get to something, then something else

25   gets filed.  So when can you file your consumer classes, a

**EXHIBIT A**

1  month?

2       MS. SCHWAB:  Your Honor, I'd like two months so that I

3  can do -- there's a little bit of expedited follow-up discovery

4  that we're hoping to do, just some very targeted interrogatories.

5       THE COURT:  I don't understand.  Why is this a

6  consumer case?

7       MS. SCHWAB:  Because we have claims under Iowa

8  consumer law and the usury laws that the system is indebting

9  the workers to the company and requiring that they work for

10  them for eight to ten months or pay off $4,000 to $6,500 in

11  loans, and them embargoing their certificate on their CDL

12  license subject to them paying that, sending it into

13  collections, applying an 18 percent per year interest rate.

14       THE COURT:  So why does it take two more months?

15       MS. SCHWAB:  We have a couple of additional gaps of

16  information that we want, but I can do it --

17       THE COURT:  That's fine, but then that extends them

18  out, so this could be the never-ending paper machine.

19       MS. SCHWAB:  That's fine, your Honor.  I can do it in

20  a month.  It's class cert.  I don't need to know every single

21  thing under the sun.  I can do it in a month.

22       THE COURT:  10/27, and then you file your opp at the

23  same time.  You're getting a big long time window here.

24       MS. SCHWAB:  And, your Honor, there are two other

25  pending motions.  There's their motion to transfer and our

**EXHIBIT A**

1  motion to amend.  I don't know if your Honor wants --

2  THE COURT:  You're adding just a new defendant, right?

3  MS. SCHWAB:  Adding a new defendant and beefing up the

4  allegations based on discovery.

5  THE COURT:  Do you oppose that?

6  MR. HANSEL:  Your Honor, we do not oppose the motion

7  to amend, but we reserve the right to file appropriate motions

8  such as Rule 12(b)(6) or --

9  THE COURT:  Fine, you can amend.  Allowed.  And then

10  so, oh, good, I get a motion to dismiss too.  And then the

11  motion to transfer, have you opposed it?

12  MS. SCHWAB:  No, not yet.  We had agreed to --

13  THE COURT:  When can you oppose it?

14  MS. SCHWAB:  Well, we can oppose it --

15  THE COURT:  He's basically -- I don't remember the

16  case that well.  I remember being horrified that the guy

17  couldn't speak English, and suddenly he finds himself in the

18  middle of Iowa; but if he could speak English, I feel a little

19  differently.

20  MS. SCHWAB:  No, it's the same that you understood

21  from the beginning, but would you like us to file our

22  opposition on 10/27 as well?

23  THE COURT:  Sure, sure.

24  MS. SCHWAB:  And when is their opposition due again?

25  THE CLERK:  So their opposition would be due -- what

# EXHIBIT A

```
 1    do you mean, on Rule 23 or --

 2              MS. SCHWAB:  Yes.

 3              (Discussion between the Court and Clerk.)

 4              MR. HANSEL:  Four months, I believe.

 5              THE COURT:  Four months is what I meant.  I'm sorry.

 6              THE CLERK:  The four months one is 1/26/18.

 7              MS. SCHWAB:  And that's for the opposition to the

 8    motion that's been filed and the motion that we'll be filing a

 9    month from now, correct?

10              MR. HANSEL:  I believe that's what your Honor said.

11              THE COURT:  I tell you what, you get together and just

12    submit a joint proposed schedule.  My theory is, they wanted

13    four more months to analyze the data, fine.  Then the opp to

14    these new class actions will be filed at the same time.  And

15    then you're going to respond to the motion to transfer within a

16    month.  You're going to file the amended complaint within a

17    month.  And what was the other thing?

18              MS. SCHWAB:  We're going to file our Rule 23 consumer

19    claim.

20              THE COURT:  Within a month, and you can work out your

21    replies and your surreplies.  Okay?

22              MR. HANSEL:  Yes, your Honor.

23              THE COURT:  But, as a practical matter, this moves

24    this whole -- let's talk about what this is doing -- it moves

25    the whole case into the spring, and that's for the firing and
```

**EXHIBIT A**

1    the hearing.  And then, it sounds like such a monster, it may

2    well take me three to six months to rule.  That's what this is

3    doing.

4            MS. SCHWAB:  I understand, your Honor.  The case is

5    what it is.  I recognize the gravity of it.  It's a lot of

6    people involved.

7            THE COURT:  Okay.

8            MS. SCHWAB:  Are we setting a hearing date, or would

9    you like to get the papers first?

10           THE COURT:  I'll get the papers first.  It just sounds

11   like a giant monster because it sounds like we'll have a

12   hearing probably sometime in -- say, if you file at the end of

13   January, then the reply and the surreply, let's say two weeks

14   apiece, pulls it to the end of February, and then it means, as

15   a practical matter, we're having a hearing in March, right?

16           MR. HANSEL:  Yes, your Honor, although I have a trial

17   for six weeks starting February 1, and this should be done by

18   March 15.

19           THE COURT:  A real trial?

20           MR. HANSEL:  Yes, your Honor.

21           THE COURT:  It's actually happening?

22           MR. HANSEL:  Yes.

23           THE COURT:  What kind of case is it?

24           MR. HANSEL:  It's an antiterrorism case before

25   Judge Marra in West Palm Beach.

# EXHIBIT A

```
 1          THE COURT:  Civil?

 2          MR. HANSEL:  A civil case, yes.  The plaintiffs'

 3  counsel might not believe this, but I actually represent the

 4  plaintiffs in that case.

 5          MS. SCHWAB:  I'm agnostic.

 6          MR. HANSEL:  We're suing Chiquita for violating the

 7  Antiterrorism Act by paying the FARC in Colombia, which then

 8  murdered five American missionaries, and there's liability for

 9  funding terrorists.

10          THE COURT:  Well, that sounds so interesting.

11          MR. HANSEL:  It's been pending for ten years.  We're

12  finally trying the case.

13          THE COURT:  That's very interesting.  So that's

14  definitely going.

15          I'm sorry, I forget this:  What firm are you with?

16          MR. HANSEL:  We're with Preti Flaherty in Boston and

17  Portland, Maine.

18          THE COURT:  So, all right, it's not a giant firm.

19          MR. HANSEL:  No.  We're just a country law firm, your

20  Honor.

21          THE COURT:  Let me just ask you this.  I mean, you're

22  not like Skadden or something where you can handle all this, so

23  this is just going to cost a fortune.  Is there any hope of

24  trying to settle some of this?

25          MS. SCHWAB:  Your Honor, it's our belief that once we
```

**EXHIBIT A**

1  have a handle on the four corners of the case, meaning what the

2  classes look like, that that would be an opportunity.  At that

3  point there might be an opportunity to settle.  Previous cases

4  against this defendant on wage issues, I know of at least one

5  in California that did settle on a Rule 23 basis for large

6  numbers of plaintiffs, but it was after a lot of litigation and

7  after class certification was ruled on.

8        THE COURT:  Just as a practical matter, we're bumping

9  this case a year by the time you file everything and by the

10 time I actually write and rule on it.

11       MS. SCHWAB:  Understood, your Honor.

12       THE COURT:  All right.  But you're saying the amount

13 of money is at least justifying.  You know, Chief

14 Justice Roberts wants me to make sure everything is

15 proportional.

16       MS. SCHWAB:  I mean, it's over 23,000 people whose

17 claims are at stake here, so that's kind of the way we're

18 looking at it.

19       THE COURT:  Okay, all right.

20       MS. SCHWAB:  Your Honor, just one other logistical

21 matter.  We have closed our discovery period on this expedited

22 discovery, so are we holding off on additional discovery during

23 the motion schedule?  I actually don't have a strong position

24 on it, to be honest.  We have a little bit of cleanup discovery.

25       THE COURT:  I don't know what you're talking about.

**EXHIBIT A**

1    Is this something nonclass discovery or merits discovery?

2            MS. SCHWAB:  We just have a little bit of followup

3    discovery that at some point we would like to do.  You know, we

4    never had a proper scheduling order because these motions came

5    in first, so we are not just in a discovery period.

6            THE COURT:  Well, when you're negotiating this joint

7    thing, why don't you just see if you can agree on discovery.

8    I'm not prepared to wing it right now.

9            MS. SCHWAB:  Okay.

10           THE COURT:  What I don't want to do is, while I'm

11   sitting there for three to six months writing these things up,

12   have it be completely, you know, dead in the water.  So it

13   might be a good opportunity to clean up some discovery in the

14   intervening year between now and when I resolve them.

15           MR. HANSEL:  There is some outstanding discovery due

16   from the plaintiff to the defendant as well.

17           THE COURT:  Well, I'm totally open to finishing off

18   discovery during this period of time, so maybe you can

19   negotiate exactly.

20           MS. SCHWAB:  Okay.  And then you'd like us to file

21   something based on our collaboration?

22           THE COURT:  Yes.  Do you think you can do it by

23   Friday?

24           MS. SCHWAB:  Yes, definitely.

25           MR. HANSEL:  Yes.

**EXHIBIT A**

```
1            THE COURT:  That's good.  Thank you.

2            MS. SCHWAB:  Okay, thank you, your Honor.

3            THE COURT:  Thank you for suggesting the status

4   conference.  It was getting out of control in my own mind.

5   Thank you.

6            MR. HANSEL:  I'm glad it was helpful.

7            (Adjourned, 10:50 a.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**EXHIBIT A**

1                        C E R T I F I C A T E

2


3

UNITED STATES DISTRICT COURT )
4   DISTRICT OF MASSACHUSETTS    ) ss.
CITY OF BOSTON                )
5

6


7           I, Lee A. Marzilli, Official Federal Court Reporter,

8   do hereby certify that the foregoing transcript, Pages 1

9   through 20 inclusive, was recorded by me stenographically at

10  the time and place aforesaid in Civil Action No. 16-10095-PBS,

11  Juan Carlos Montoya, et al v. CRST Expedited, Inc., and

12  thereafter by me reduced to typewriting and is a true and

13  accurate record of the proceedings.

14          Dated this 22nd day of December, 2017.

15

16

17

18

19          /s/ Lee A. Marzilli
            _____
20          LEE A. MARZILLI, CRR
            OFFICIAL COURT REPORTER
21

22

23

24

25