**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JUAN CARLOS MONTOYA, on his own behalf and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>CRST EXPEDITED, INC. and CRST INTERNATIONAL, INC.,<br><br>Defendants. | Civil Action No. 1:16-cv-10095-PBS |

**PLAINTIFFS' PRELIMINARY[1] PETITION FOR ATTORNEYS' FEES AND COSTS**

The Court granted preliminary approval of the proposed class and collective action settlement in this case on January 16, 2021. ECF Dkt. No. 331. Notice subsequently went out to approximately 30,000 individuals who were eligible to participate in the settlement. The deadline to submit a claim form to participate in the case is April 26, 2021, and the Court has scheduled a final settlement approval hearing to take place on May 26, 2021, at 2:30 p.m.

Plaintiffs file this preliminary petition for attorneys' fees and costs pursuant to Rule 23(h) of the Federal Rule of Civil Procedure. The notice to class members informed them: "Class Counsel will file a motion for attorneys' fees and costs by April 12, 2021. If you would like to receive a copy of that motion, please contact Class Counsel (contact information in Section 8 below) after that date." *See, e.g.*, https://crstsettlementclaim.com/.

1 Plaintiffs will file an updated petition with the final settlement approval motion in May 2021.

This motion contains currently available information about Plaintiffs' counsel's fees and costs. The motion for final settlement approval will contain updated information, as well as information about the settlement claim rate, etc.

Plaintiffs' counsel seek an award of attorneys' fees of $4.166.667, which is one-third of the settlement fund. Additionally, Plaintiffs' counsel seek costs up to $750,000, including the costs of settlement administration. This award is fair and reasonable. It is commensurate with awards in other similar cases and properly recognizes the substantial relief obtained for the class members, the significant work expended by the attorneys over the past five years, and the myriad risks that the attorneys took on in bringing these cases.[2]

**ARGUMENT**

## I. THE PROPOSED ATTORNEYS' FEE AWARD IS REASONABLE.

Courts in the First Circuit typically award attorneys' fees in class action settlements as a percentage of a common fund. *See In re Thirteen Appeals Arising out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir.1995). The First Circuit recognized in *Thirteen Appeals* that there are "distinct advantages" of the percentage of the fund method (as opposed to a lodestar method), namely that it is "often less burdensome to administer than the lodestar method," it "enhances efficiency," it is

[2] The proposed class settlement would resolve this case (other than one issue that is going up on appeal after entry of separate and final judgment by the Court on January 16, 2021), as well as two other cases, *Larry Wimbish and Rinel Tertilus, et al. v. CRST International, Inc. et al.*, Civil Action No. 16-2020-CA-003424 (Fla. 4th Cir., Duval Cty.), and *Maurice Smith et al. v. CRST International, Inc. et al.*, D. Mass. Civil Action No. 1:20-cv-11353-PBS.

"result-oriented," etc. *Id*. at 307. The fundamental question for the Court in analyzing an attorneys' fee request is whether the requested award is "reasonable." *Id.* at 305.

As this Court has previously observed, "[i]n weighing a common fund request, courts generally consider the so-called *Goldberger* factors," which are: "'(1) the size of the fund and the number of persons benefitted; (2) the skill, experience, and efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risks of the litigation; (5) the amount of time devoted to the case by counsel; (6) awards in similar cases; and (7) public policy considerations.'" *In re Neurontin Mktg. & Sales Practices Litig.*, 58 F. Supp. 3d 167, 170 (D. Mass. 2014) (quoting *In re Lupron Mktg. & Sales Practices Litig.,* 2005 WL 2006833, at *3 (D. Mass. Aug. 17, 2005), citing *Goldberger v. Integrated Res., Inc.,* 209 F.3d 43, 50 (2d Cir.2000)).

Application of the *Goldberger* factors supports the fee award requested by Plaintiffs' counsel.

**1. The size of the fund and the number of persons benefitted.**

The total settlement fund is $12,500,000. The settlement is non-reversionary, meaning that the entire amount (after payment of attorneys' fees, costs, and incentive payments) will be distributed to eligible class members; no amount will revert to Defendants. Schwab Aff. ¶ 2. Though the total amount to be distributed and range of awards will not be known until the close of the claim period, it is anticipated that most class members will receive over $100, with thousands of class members receiving payments of $1,000 or more. Schwab Aff. ¶ 3. It is also worth noting that the settlement payments are real money, going to real people—not coupons, discounts, or credits, the

value of which may be difficult to estimate. *See, e.g.*, Manual for Complex Litig., 4th, Fed. Judiciary Center 2004, § 14.121 ("where the common benefits are in the form of discounts, coupons, options, or declaratory or injunctive relief, estimates of the value or even the existence of a common fund may be unreliable").

Moreover, in addition to this monetary relief, the settlement includes significant non-monetary relief. The non-monetary relief is outlined in detail in Plaintiffs' motion for preliminary approval, ECF Dkt. No. 310, at Section III (pp. 6-8). Briefly, the non-monetary relief includes: significant relief from monetary obligations imposed by CRST and assisting drivers in clearing their credit; removal of barriers to obtaining subsequent employment (including reduced enforcement of CRST's non-competition provision); increased wages, including minimum wage for orientation and drivers not having driver training school tuition amounts deducted from final paychecks; and increased notice about amounts to be deducted or sought in post-employment collections and the actual tuition for driver training school. *Id*.

Most of this non-monetary relief applies to all CRST drivers who have been affected by the practices challenged in this case, not only those who submit claims to participate in the settlement, and it likely impacts more than 20,000 class members, in addition to current and future CRST drivers. Schwab Aff. ¶ 4.

This significant non-monetary relief does at least four important things for class members. First, it relieves them of the obligation to pay monies to CRST in excess of amounts CRST actually paid in driver training school tuition, which benefits the drivers economically. Second, it alleviates the negative credit that may have flowed

from drivers' purported unpaid debts to CRST. Third, it removes barriers for class members to get other jobs in the trucking industry, by ensuring that drivers do not get negative employment references from CRST because of purported debt owed and by reducing enforcement of CRST's non-competition provision. As this Court noted in issuing a preliminary injunction in this case, "the public has a strong interest in facilitating the full employment of trained truck drivers during the present public health crisis." *Montoya v. CRST Expedited, Inc.*, 2020 WL 2850235, at *2 (D. Mass. Jun. 2, 2020). Finally, this relief ensures increased wages for CRST drivers going forward.

In other words, the non-monetary relief afforded by this settlement puts the class members and other CRST drivers in a significantly better economic and financial position than they were in before the settlement. The potential value of removing debt, improving credit, and opening up new career opportunities is boundless. This is particularly true now, in light of the economic hardships that many people are suffering from due to the COVID19 pandemic. *See, e.g., Montoya v. CRST Expedited, Inc.*, 2020 WL 2850235, at *1 (D. Mass. Jun. 2, 2020) (enjoining company's debt collection practices because, *inter alia*, "[t]hese harms to class members are immediate and ongoing and carry particular weight during the present period of national economic strain").

Courts recognize that "[t]he fact that counsel obtained injunctive relief in addition to monetary relief for their clients is . . . a relevant circumstance to consider in determining what percentage of the fund is reasonable as fees." *Staton v. Boeing Co.*, 327 F.3d 938, 946 (9th Cir. 2003); *see also Stevens v. SEI Investments Co.*, 2020 WL 996418, at *10 (E.D. Pa. Feb. 28, 2020) ("non-monetary benefit" from settlement "supports approval

of the requested fee"). Here, the size of the fund—which will afford real monetary relief to thousands of class members—plus the significant non-monetary relief, in the form of debt relief, improved credit, removal of barriers to employment in the trucking industry, and increased wages for drivers going forward—supports the requested fee award.

**2. The skill, experience, and efficiency of the attorneys involved.**

Plaintiffs' counsel have brought decades of expertise in class action litigation to this case. As set forth in the attached Affidavit of Hillary Schwab, Esq., all of plaintiffs' attorneys have extensive experience representing workers in wage and hour class actions. Schwab Aff. ¶¶ 5-10. This Court appointed the undersigned as class counsel in this case in May 2018. *Montoya v. CRST Expedited, Inc.*, 311 F. Supp. 3d 411 (D. Mass. 2018).

Plaintiffs' counsel has achieved notable success in this case over the course of the litigation, including defeating a motion to dismiss or transfer this case to the United States District Court for the Northern District of Iowa, obtaining class and collective action certification, obtaining partial summary judgment, and obtaining a preliminary injunction on behalf of the class. *See* Section I.3, *infra*.

This factor supports the requested fee award.

**3. The complexity and duration of the litigation.**

As numerous courts have observed, "FLSA claims and wage-and-hour law enforcement through litigation has been found to be complex by the Supreme Court and lower courts." *Brumley v. Camin Cargo Control, Inc.*, Civ. A. No. 08-1798, 2012 WL

1019337, at *11 (D.N.J. Mar. 26, 2012). Moreover, in the wage and hour context, it does not get much longer or more complex than this case. The case was originally filed in January 2016. It has been fought heavily over more than five years, with at least four significant legal rulings in Plaintiffs' favor.

First, in January 2018, this Court denied CRST's motion to dismiss the case or transfer it to the United States District Court for the Northern District of Iowa, based on CRST's forum selection clause in its driver employment contracts. ECF Dkt. No. 120. The Court held that enforcement of the forum selection clause would be unreasonable and unjust, in light of the fact that, if Plaintiff Montoya did not sign the agreement containing the forum selection clause, "he would have been stranded in Iowa without bus fare home and with a debt of $2,000." *Id*. at 11. This issue of transferring forum was hard fought—the Magistrate Judge originally recommended that the case be transferred to the United States District Court for the Northern District of Iowa, but this Court denied the motion and ordered that limited discovery should proceed on the issue, after which Defendants renewed their motion (which the Court ultimately denied). ECF Dkt. Nos. 38, 42, 43.

Second, the Court granted class and collective action certification in May 2018, certifying an FLSA collective on Plaintiffs' claims for unpaid orientation wages and unpaid minimum wages and unlawful deductions during driving time, certifying a Rule 23 class of drivers who attended unpaid orientation in Iowa for unpaid minimum wages under the Iowa wage laws, certifying a Rule 23 class of drivers who faced training-related deductions and/or collections under the Iowa consumer fraud statute,

and certifying a Rule 23 class under the Iowa usury law of drivers who signed employment contracts, did not complete Phase 4 of the Driver Training Program, and received collections letters. ECF Dkt. No. 131. Notice went out to these classes/collectives (approximately 31,780 individuals) in November 2019.

Third, on September 6, 2019, the Court ruled in Plaintiffs' favor on a number of issues on summary judgment, specifically: (1) the Court held that orientation was working time for which the drivers should have been compensated at at least the minimum wage; (2) numerous of the deductions that CRST took from drivers' pay were unlawful to the extent that they brought drivers' wages below minimum wage; (3) CRST's practice of charging drivers thousands of dollars more for driver training school "tuition" than CRST actually paid to the schools violated the Iowa consumer protection laws; and (4) CRST's sending of collection letters that indicated an 18% interest rate on amounts owed violated the Iowa usury laws. ECF Dkt. No. 194.

Fourth, the Court issued a preliminary injunction in June 2020, enjoining CRST from two practices: (1) "seeking to recover from class members as a 'training fee' any amount in excess of the amount that CRST actually paid for truck driving school tuition and in no case in excess of $2,500"; and (2) "enforcing the non-competition provision in drivers' contracts based on a driver's failure to repay any portion of the training fee' in excess of the amount that CRST actually paid for tuition." ECF Dkt. No. 266 at 6.

In addition to substantive motion practice, the case has involved significant discovery. This has included 30 depositions (including two 30(b)(6) depositions—of a total of nine separate witnesses—taken over approximately three full days), hundreds

of thousands of documents produced by CRST, named plaintiffs, and opt-in plaintiffs, third-party subpoenas, and discovery motion practice.

This settlement also resolves two other cases. First, in June 2020, two CRST drivers brought a case in state court in Florida on behalf of drivers who had attended unpaid orientation in Florida, alleging violations of Florida's minimum wage statute. *Larry Wimbish and Rinel Tertilus, et al. v. CRST International, Inc. et al.*, Civil Action No. 16-2020-CA-003424 (Fla. 4th Cir., Duval Cty.). Second, in July 2020, drivers filed *Maurice Smith et al. v. CRST International, Inc. et al.*, D. Mass. Civil Action No. 1:20-cv-11353-PBS, which brought claims relating to CRST's unlawful over-enforcement of its non-competition provision and brought claims under the FLSA and the Iowa wage laws on behalf of individuals who started working for CRST after July 2019 and did not receive class notice in the *Montoya* case. *See Smith*, ECF Dkt. No. 13 (1st Am. Compl.).

The parties have devoted substantial time and resources to attempting to resolve the case over the years as well. The parties attended four full-day mediations, with three different experienced mediators, between December 2018 and October 2020. Schwab Aff. ¶ 11.

The Court's decisions in this case have been important for wage and hour and consumer cases in the trucking industry and in other industries as well. Indeed, they have been cited in numerous other cases. *See, e.g.*, *Ciotola v. Star Transportation & Trucking, LLC*, 481 F. Supp. 3d 375, 385 (M.D. Pa. 2020) (citing this Court's decision that the Federal Aviation Administration Authorization Act did not preempt Plaintiffs' consumer claims in holding that state tort claims were not preempted); *Browne v. P.A.M.*

*Transp., Inc.*, 2020 WL 412126, at *3-*4, n.8 (W.D. Ark. Jan. 24, 2020) (citing with approval this Court's conclusion that the U.S. Department of Labor's interpretation of regulations governing the compensability of sleep time was not entitled to deference); *McNutt v. Swift Transportation Co. of Arizona, LLC*, 2020 WL 3819239, at *6 (W.D. Wash. July 7, 2020) (same).

In other cases involving novel legal issues, courts have held that significant fee awards are warranted. For example, in *In re Lupron Mktg. & Sales Practices Litigation*, the Court awarded the requested amount for attorneys' fees, noting: "The case has been vigorously contested from its inception, as evidenced by the number of decisions that have issued from this court and the Court of Appeals addressing matters of jurisdiction, discovery, privilege, class certification, and substantive law." 2005 WL 2006833, at *4 (D. Mass. Aug. 17, 2005); *see also Erie County Retirees Association v. County of Erie, Pennsylvania*, 192 F. Supp. 2d 369, 380 (W.D. Pa. 2002) (noting that "[t]he novelty of the central issue . . . required substantial research and preparation at the summary judgment stage and ultimately, required appellate work before the United States Court of Appeals for the Third Circuit and the United States Supreme Court," which "weighs in favor of a fee award above the percentage that is typically awarded in common fund cases").

The length of this case and the complexity and depth of the issues involved support the requested fee award.

**4. The risks of the litigation.**

"Many cases recognize that the risk assumed by an attorney is 'perhaps the foremost factor' in determining an appropriate fee award." *In re Lupron Mktg. & Sales Practices Litig.*, 2005 WL 2006833, at *4 (D. Mass. Aug. 17, 2005) (quoting *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 54 (2d Cir. 2000)).

The risks in this case were substantial. The case includes several significant decisions, bearing potential risks on appeal. While the case was almost ready for trial, Plaintiffs' *Daubert* motions to exclude Defendants' expert witness reports were pending at the time of settlement. Moreover, several questions remained regarding methodology and amount of damages for each of the claims in the case. Schwab Aff. ¶ 12.

As discussed in more detail in Section I.7, *infra*, the fact that Plaintiffs took on this case on a full contingency fee basis increased the risks. "'A contingency fee arrangement often justifies an increase in the award of attorneys' fees,'" because of contingency fee cases involve the "'investment of substantial time, effort, and money,'" with "'the risk[] of recovering nothing.'" *Lupron*, 2005 WL 2006833, at *4 (quoting *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 548 (S.D.Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir.1990)).

In spite of significant uncertainty in this case, Plaintiffs' counsel were able to negotiate a settlement that afforded substantial monetary and non-monetary relief to more than 30,000 class members. This factor also supports the requested fee award.

**5. The amount of time devoted to the case by counsel.**

Courts in the First Circuit may (though need not) look at counsel's lodestar fees to "doublecheck" the reasonableness of a percentage-of-common-fund fee award. *See Conley v. Sears, Roebuck & Co.*, 222 B.R. 181, 187 (D. Mass. 1998) (noting that lodestar method can be used to "doublecheck" the reasonableness of a fee); *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, 2009 WL 2408560, at *1 (D. Mass. Aug. 3, 2009) ("In the First Circuit, '[t]he lodestar approach . . . can be a check or validation of the appropriateness of the percentage of funds fee, but is not necessary.'").

To date, Plaintiffs' counsel's hours, multiplied by reasonable hourly rates, come to:

| Firm | Timekeeper | Title | Years of experience | Hours | Rate | Fees |
|---|---|---|---|---|---|---|
| Fair Work, P.C. | Hillary Schwab | Attorney, Founding Partner | 20+ | 1004.6 | $650 | $652,990.00 |
| Fair Work, P.C. | Rachel Smit | Attorney | 5-10 (significant contrib.) | 1487.2 | $450 | $669,240.00 |
| Fair Work, P.C. | Brant Casavant | Attorney | 10-15 | 17.9 | $500 | $8,950.00 |
| Fair Work, P.C. | Kendall Gedeon | Paralegal | | 512.2 | $175 | $89,635.00 |
| Fair Work, P.C. | Bria Gambrell | Paralegal | | 479.5 | $175 | $83,912.50 |
| Andrew Schmidt Law PLLC | Andrew Schmidt | Attorney, Founding Partner | 10-15 | 8 | $550 | $4,400.00 |
| Andrew Schmidt Law PLLC | Peter Mancuso | Attorney | 10-15 | 115.8 | $500 | $57,900.00 |
| Burr & Smith LLP | Loren Donnell | Attorney | 10-15 | 43.6 | $500 | $21,800.00 |
| Burr & Smith LLP | Sam Smith | Attorney, Founding Partner | 20+ | 2.5 | $650 | $1,625.00 |
| Burr & Smith LLP | Trish Smith | Paralegal | | 0.4 | $175 | $70.00 |
| | | | | | | |
| Total | | | | 3671.7 | $ | 1,590,522.50 |

Schwab Aff. ¶¶ 13-16. Plaintiffs' counsel expect that substantial additional time will be expended on class settlement administration, communication with class members,

briefing for final settlement approval, etc., between now and the end of the case as well. Schwab Aff. ¶ 17.

As of now, the lodestar multiplier for the requested fee award would be approximately 2.62 ($4,166,667 divided by $1,590,522.50). This multiplier is well within the range of reasonableness. *See, e.g., In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 298-99, 303-04 (3d Cir. 2005) (approving fees with "fairly common" lodestar multiplier of over 4); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) (affirming district court's fee award for which the lodestar cross-check resulted in a 3.65 multiplier). In fact, the 3.8 multiplier is significantly lower than lodestar multipliers previously approved by this Court. *See, e.g., Conley v. Sears, Roebuck & Co.*, 222 B.R. 181, 182 (D. Mass. 1998) (Saris, J.) (approving lodestar multiplier of 8.9, even where plaintiffs' counsel were "piggybacking" on prior success by another plaintiffs' firm in a different case); *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) Saris, J.) (awarding fees representing 8.3 lodestar multiplier). Moreover, the lodestar multiplier will decrease, because of the anticipated additional time that Plaintiffs' counsel will continue to spend on this case. Schwab Aff. ¶ 17.

Accordingly, the fact that the one-third fee award would constitute a lodestar multiplier under 3.0 further supports approving the fee award.

**6. Awards in similar cases.**

The requested fee award, of one-third of the settlement fund, is consistent with other fee awards in this District and elsewhere. *See, e.g., Carlin v. DairyAmerica, Inc.*, 380

F. Supp. 3d 998, 1023 (E.D. Cal. 2019) (awarding 33.33% of $40 million common fund); *Roberts v. TJX Companies, Inc.*, 2016 WL 8677312 (D. Mass. Sept. 30, 2016) (awarding attorneys' fees of 1/3 (33 1/3%) of $4.75 million settlement); *Standard Iron Works v. ArcelorMittal*, No. 08 C 5214, 2014 WL 7781572 (N.D. Ill. Oct. 22, 2014) (awarding 33% of $163.9 million settlement fund); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005) (awarding 33% of $67 million settlement); *In re Vitamins Antitrust Litig.*, 2001 WL 34312839 (D.D.C. 2001) (awarding attorneys' fee award of over $123 million, which was 33 1/3% of common fund).

This Court recently awarded the undersigned counsel one-third of all amounts distributed to class members in a class action settlement in another wage and hour case in the trucking industry. *See Oliveira v. New Prime, Inc.*, Final Approval Order, ECF Dkt. No. 289.

**7. Public policy considerations.**

As the Second Circuit held in *Goldberger v. Integrated Resources, Inc.*, attorneys' fee awards "should reflect the important public policy goal of 'providing lawyers with sufficient incentive to bring common fund cases that serve the public interest.'" *Baudin v. Res. Mktg. Corp., LLC*, 2020 WL 4732083, at *13 (N.D.N.Y. Aug. 13, 2020) (quoting *Goldberger*, 209 F.3d 43, 51 (2d Cir. 2000)). Awarding attorneys' fees as a percentage of the common fund recognizes the vital role that contingency arrangements play in making legal counsel available to individuals who cannot afford hourly fees. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 448 (1983) (noting that "[a]ttorneys who take cases on contingency, thus deferring payment of their fees until the case has ended and

taking upon themselves the risk that they will receive no payment at all, generally receive far more in winning cases than they would if they charged an hourly rate").

Awarding fees from a common fund also incentivizes parties to discuss settlement early and reach an early resolution of a case, if possible. Indeed, it "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 188 (W.D.N.Y. 2005). Moreover, awarding fees from a common fund recognizes that firms may spend years developing the case law in a particular field and obtaining favorable decisions, all of which contributes to early resolution of later cases. *See In re Giant Interactive Group Inc. Sec. Litig.*, 2011 WL 5244707, at *10 (S.D.N.Y. Nov. 2, 2011) (quoting *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d. 319, 359 (S.D.N.Y. 2005)) ("[T]he Court finds [th]at public policy supports the award of a 33% fee in this case, the better to 'attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so.'").

In the context of wage and hour class actions particularly, "public policy favors a common fund attorneys' fee award." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 477 (S.D.N.Y. 2013). Indeed, "[p]rotecting workers from wage-and-hour violations is of genuine public interest, and fees in such cases should provide incentives for counsel to bring such cases in the future." *Baudin*, 2020 WL 4732083, at *13; *see also Beckman*, 293 F.R.D. at 477 ("The FLSA and state wage and hour statutes are remedial statutes, the purposes of which are served by adequately compensating attorneys who protect wage and hour rights."). As one court has noted:

> Where relatively small claims can only be prosecuted through aggregate litigation, "private attorneys general" play an important role. . . Attorneys who fill the private attorney general role must be adequately compensated for their efforts. If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. . . Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA and [state wage laws].

*Daoust v. Maru Rest., LLC*, 2019 WL 2866490, at *5 (E.D. Mich. July 3, 2019).

Plaintiffs' counsel took this case on a fully contingent fee arrangement, enforcing the wage and hour laws on behalf of tens of thousands of workers, the vast majority of whom would be wholly without remedy if not for Plaintiffs' counsel's advocacy. Public policy considerations support the requested fee award.

## II. PLAINTIFFS' REQUESTED AWARD FOR COSTS IS REASONABLE.

The settlement agreement provides that Plaintiffs' counsel may request an award of costs of up to $750,000, including the costs of settlement administration—specifically, up to $500,000 for Plaintiffs' counsel's litigation expenses, and up to $250,000 for settlement administration costs. Schwab Aff. ¶ 18. Plaintiffs' counsel intend to submit updated information about costs with the motion for final settlement approval. To date, Plaintiffs' counsel have incurred $378,483.76 in litigation expenses. This includes filing fees; depositions (both in-person and by video); deposition-related travel; court hearing transcripts; subpoenas; mediations; costs associated with the initial (non-settlement) class notice; *pro hac vice* fees; and expert fees. The current estimate from the settlement administrator for administering this settlement is approximately $190,000. Schwab Aff. ¶¶ 19-21.

Expenses such as those sought in this case have been awarded as reasonable in other class actions in this District. *See, e.g.*, *Carlson v. Target Enterprises, Inc.*, 447 F. Supp. 3d 1, 6 (D. Mass. 2020) (awarding expenses requested by Plaintiffs in class action for "costs associated with mediation, travel expenses, filing fees, and postage"); *Bezdek v. Vibram USA, Inc.*, 79 F. Supp. 3d 324 ("The listed expenses include, among other things, costs associated with mediation, legal research, filing fees, consultation with experts, photocopying, and travel to hearings, depositions, and meetings. I find these expenses reasonable and will allow the request.").

Pursuant to the settlement agreement, Plaintiffs' counsel will only seek up to $750,000 in costs, even if actual costs exceed that amount. Plaintiffs' costs are reasonable.

## CONCLUSION

For the reasons set forth above, Plaintiffs' counsel's request for an award of $4,166,667 (one-third of the settlement fund) for attorneys' fees and an award of costs up to $750,000 is reasonable. Plaintiffs will renew their request for this award of attorneys' fees and expenses in the final settlement approval motion.

Respectfully submitted,

JUAN CARLOS MONTOYA,
on behalf of himself
and all others similarly situated,

By their attorneys,

*/s/ Hillary Schwab*
Hillary Schwab (BBO #666029)
Rachel Smit (BBO #688294)
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
Tel. (617) 607-3261
Fax. (617) 488-2261
hillary@fairworklaw.com
rachel@fairworklaw.com

Andrew Schmidt, Esq.
Admitted *pro hac vice*
Andrew Schmidt, PLLC
97 India St.
Portland, ME 040101
Tel. (207) 619-0320
Fax. (207) 221-1029
Andy@MaineWorkerJustice.com

Dated: April 12, 2021

**CERTIFICATE OF SERVICE**

I hereby certify that on April 12, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Hillary Schwab*
Hillary Schwab